No. 25553

**The People of the State of Colorado v.
James Nathaniel Anderson**
(518 P.2d 828)

Decided January 21, 1974.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Jack E. Hanthorn, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, J. D. MacFarlane, Chief Deputy, Thomas M. Van Cleave III, Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

This is an appeal from convictions of two counts of assault with intent to murder, C.R.S. 1963, 40-2-34, and one count of conspiracy to sell narcotic drugs, C.R.S. 1963, 48-5-20. We affirm.

On June 7, 1971, an undercover agent of the Federal Bureau of Narcotics and Dangerous Drugs met with the appellant in Denver. The purpose of the meeting was to negotiate the sale of a large quantity of marijuana. Appellant related his past experiences in the drug market, specifically describing how he had procured drugs from Mexico in the past and emphasizing his ability to get some marijuana in the future. The following night, they met again in Boulder, where they were joined by another drug entrepreneur, Lopez. They again discussed a sale of drugs, but mutual difficulties precluded its consummation. As he left, the appellant gave the agent a small quantity of marijuana.

About a month later appellant contacted the agent to inform him he had located some drugs. A meeting was arranged to take place in Colorado Springs, this time with a second undercover agent. Together the three went to appellant's residence, where Lopez was waiting. They began discussing the sale, but appellant suddenly accused both agents of being "narcs," pulled out a revolver and fired at the agents. Both agents were wounded. Appellant and Lopez were subsequently arrested, tried together, and appellant was convicted of the previously mentioned charges. His defense was that he had no marijuana to sell, but solely intended to "con" the agents out of their money.

## I.

■ Appellant's first assignment of error relates to the admission into evidence of the substance of conversations with the agent in Denver and Boulder more than a month prior to the date of the charges growing out of the wounding of the agents. Appellant now argues that this testimony was only remotely related to the offenses charged, was prejudicial, and merited a limiting instruction as set forth in *Stull v. People,* 140 Colo. 278, 344 P.2d 455 (1959). We disagree.

■ Appellant was charged with conspiracy to sell narcot-

ics, and as part of the proof of such a charge conversations leading up to the actual attempt to complete a sale are relevant. We have long adhered to the rule that all the facts which are necessary to prove the crime charged in the information, *when linked to the chain of events which supports that crime,* are admissible. This is true even though the evidence shows the commission of other crimes not presented in the information. *White v. People,* 177 Colo. 386, 494 P.2d 585 (1972); *Johnson v. People,* 174 Colo. 413, 484 P.2d 110 (1971); *Armijo v. People,* 134 Colo. 344, 304 P.2d 633 (1956).

*Stull, supra,* does not control the disposition of this case. That case holds that a limiting instruction must be given where similar transactions are shown. The testimony here was part of the entire criminal transaction and was admissible as direct evidence of the commission of that crime.

## II.

Appellant next argues that the trial court erred when it refused to grant a motion for mistrial.

The basis for the motion relates to a question by the district attorney whether the agent knew his prognosis for recovery from the wounds he received when appellant shot him. Before any answer was given, defense counsel's objection was sustained, and the jury was admonished to disregard the question. In addition, a general instruction was given that informed the jury that evidence stricken was the same as never received.

We perceive no error in the denial of the motion. A mistrial is among the most drastic of remedies for prejudicial conduct. *Valley v. People,* 165 Colo. 555, 441 P.2d 14 (1968). It is addressed to the sound discretion of the trial court. *Moore v. People,* 174 Colo. 286, 483 P.2d 1340 (1971); *Scott v. People,* 166 Colo. 432, 444 P.2d 388 (1968). The prejudice must be such that its effect on the jury could not be remedied by a means less than a mistrial. *Maisel v. People,* 166 Colo. 161, 442 P.2d 399 (1968).

The unanswered question, standing alone, was not prejudi-

cial. Even though the answer may well have been irrelevant, no answer was given.

## III.

As his third ground for reversal, defendant complains of two aspects of the testimony of a doctor who had administered to the agents. Each will be discussed separately.

A. *Relevancy.*

The doctor was called by the People. The substance of his testimony related to his expert opinion as to the character and seriousness of the wounds received by the agents. On direct examination, he was asked the length of hospitalization of one of the agents. There being no defense objection, the doctor answered "three weeks" but immediately changed the answer to "five weeks." The defense then objected on the grounds of relevancy. The objection was sustained, the answer was ordered stricken and the jury admonished to disregard the question and answer.

■ Appellant contends that this testimony was irrelevant and that, further, all evidence offered by the doctor as to the seriousness of the wounds should have been stricken on the grounds that it was irrelevant. With regard to the testimony of the length of hospitalization, we need only note that where an answer is stricken, it must be presumed that the jury has disregarded that evidence, *Leick v. People,* 136 Colo. 535, 322 P.2d 674, *cert. den.* 357 U.S. 922, 78 S.Ct. 1363, 2 L.Ed.2d 1366 (1958). The record shows, in addition, that defense counsel made no objection when the doctor testified earlier about the length of hospitalization of the other agent. These circumstances eliminate any hint of prejudice arising from the stricken testimony.

■ The testimony about the wounds received was a recitation of what occurred as a result of the shooting. Therefore, it was not irrelevant. *Wooley v. People,* 148 Colo. 392, 367 P.2d 903 (1961).

B. *Expert Testimony.*

■ Appellant also argues that the admission into evidence of the doctor's testimony as to certain technical

matters went beyond the scope of his qualifications as an expert. We disagree.

The first aspect of defendant's argument is based on the testimony by the doctor as to the effect of being shot by a .45 caliber bullet. The defendant claims the doctor was not qualified to draw any conclusion. In view of the fact that the doctor had treated over one thousand bullet wound victims with wounds of all caliber of bullets, we cannot perceive how it is debatable that he was qualified. *Ausmus v. People,* 47 Colo. 167, 107 P. 204 (1910). The competency of an expert is for the trial court to determine, *Bradford v. People,* 22 Colo. 157, 43 P. 1013 (1896), and will not be grounds for reversal absent a clear showing of abuse of discretion. There is no such abuse here.

IV.

■ As his final assignment of error, the appellant argues that the trial court erred in admitting the silencer to his weapon into evidence.

The facts reveal that appellant testified on direct examination that, to protect himself, he borrowed the pistol and silencer two or three weeks before the shooting. The apparent purpose of this testimony was to contradict the People's assertion that he intended to kill the suspected narcotics agents. On cross-examination, the People moved that the silencer be admitted into evidence. The trial court granted the motion. Appellant now contends the silencer was irrelevant evidence.

Since the defendant placed the circumstances surrounding the acquisition of the silencer at issue in the first instance, it is inconceivable that the silencer was irrelevant when offered to rebut the inference that the defendant did not intend to kill the agents.

The judgment is affirmed.