No. 25558

**The People of the State of Colorado v. Edward Anthony Lowe**

(519 P.2d 344)

Decided February 25, 1974.      Rehearing denied March 18, 1974.

John P. Moore, Attorney General, John E. Bush, Deputy, Patricia W. Robb, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, J. D. MacFarlane, Chief Deputy, Brian J. Mullett, Deputy, T. Michael Dutton, Deputy, Kevin Kubie, Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

Appellant, Edward Anthony Lowe, was convicted by a jury of first-degree murder and sentenced to life in prison in the state penitentiary. We find no prejudicial error and therefore affirm the judgment of conviction.

Appellant's guilt was established by circumstantial evidence which we here summarize. He did not testify in his own behalf or offer any defense testimony.

The People's evidence established that the victim of the murder, Shirley Webb, was the assistant manager of the Kingsborough apartments located in the Village Seven area of Colorado Springs. She was viciously murdered during the morning of October 22, 1970, while showing a vacant apartment to a man whom she thought to be a prospective tenant. She was garrotted by use of a small cord or rope and died of strangulation. She had also been sexually assaulted and her body bore thirteen stab wounds.

The evidence showed that shortly after 9 a.m. on the 22nd of October Shirley Webb was engaged in talking with two prospective tenants, Dr. Thomas Georgen and his wife, Carol. Appellant drove his orange-colored motorcycle into the apartment complex and went to the manager's office where he confronted Shirley Webb and the Georgens. Appellant carried a dark plastic cycle helmet under his arm. His forehead was wrapped in gauze and the right side of his face was covered with a gauze bandage. He had a small gauze-type bandage fastened with a piece of tape across his nose. The bandages appeared to be clean and fresh and Dr. Georgen did not observe any evidence of wounds or abrasions in the facial areas where they were worn.

Appellant advised Shirley Webb he had previously been a tenant at that apartment and he desired to see any vacancies. She told him to wait outside the office as she was about to show the Georgens through the apartments. Appellant waited outside where he was also observed face-to-face by a tenant,

Gordon McCay, who was leaving the building to walk his dog. McCay observed appellant from a distance of about two feet. Upon his return he again saw appellant from close proximity.

Shirley Webb was last seen alive by another tenant, Peggy Klinker, who was driving out of the apartment complex on her way to work at approximately 9:30 a.m. This witness saw Shirley and a man she described as similarly dressed and wearing bandages about the face and head enter into the apartment building at 3865 South Carefree Circle. This was the building in which Shirley Webb's body was discovered in the bedroom closet of Apartment M at approximately noontime of that day.

Later that morning, sometime before 11 a.m., one John Godsey, a friend of appellant, observed him driving south on Academy Boulevard on his orange motorcycle to the intersection of Academy and Palmer Park Boulevard where appellant turned left and disappeared from view. The Kingsborough apartment complex is located several blocks directly north of this intersection.

Further incriminating circumstances were the appearance of appellant at the pawn shop of his brother, Max Lowe, at about noon of that day. There, Max asked appellant if he had heard about the possible murder at the Village Seven, to which appellant replied: "Oh, my God, I suppose they will be investigating me now." He also stated: "You're my alibi. You know where I was, I was here all morning." In response to a question concerning his whereabouts earlier that morning, appellant stated he had been in his attorney's office. This statement was not verified. At first, Max Lowe confirmed this alibi to the police but later repudiated it. Additionally, a significant circumstance was appellant's statement to two of his friends a few weeks after the murder, which was being discussed generally by the three of them. It was not commonly known that Shirley Webb was not a blond. Her natural hair color was brown. At the time of the murder she was wearing a blond wig. Appellant remarked to his friends that: "She was a pretty little thing; had long dark hair."

It was essentially upon the incriminating identification

testimony and the foregoing details that the jury concluded appellant was the guilty assailant.

I.

█ Error is assigned for the failure of the trial court to grant appellant's motion for judgment of acquittal at the conclusion of the People's case. In our view, the evidence when viewed as a whole in the light most favorable to the People was substantial and sufficient to support a conclusion in the minds of reasonable men that appellant was guilty beyond a reasonable doubt. *People v. Bennett,* 183 Colo. 125, 515 P.2d 466. The appellant, having chosen not to testify or to present any evidence by way of explanation of that offered by the People, which was his right, cannot successfully complain on appeal that the jury drew inferences of guilt against him. *Moore v. People,* 174 Colo. 286, 483 P.2d 1340; *Garcia v. People,* 172 Colo. 329, 473 P.2d 169; *Mathis v. People,* 167 Colo. 504, 448 P.2d 633. The guilty verdict in our view of the record is amply supported by substantial circumstantial evidence and will not be disturbed by this Court on review.

II.

Appellant argues that the court erred in not suppressing the in-court identification of appellant by Gordon McCay, on two grounds: first, that he did not have counsel at the pre-indictment photographic displays and lineups; and, second, the in-court identification was the product of illegally suggestive photographic displays and lineup procedures.

█ The record shows that all photographic displays and lineups were conducted during the investigative stages of the case, several months prior to the indictment of appellant on September 1, 1971. Appellant was not, therefore, entitled to counsel either at the photographic displays or at the lineups under these circumstances. *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411; *People v. Renfro,* 181 Colo. 159, 508 P.2d 396. *See also, United States v. Ash,* 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619.

█ Nor do we find merit to appellant's other contention — that of undue suggestiveness so as to taint the in-court

identification by Gordon McCay. The trial court conducted an extensive *in camera* evidentiary hearing and after detailed findings concluded there were no improprieties on the part of the investigating officers in the conduct of the displays or the lineups to support any conclusion that they were unduly suggestive so as to illegally taint the in-court identification. This determination is amply supported by the record and will not be disturbed on review absent a clear abuse of discretion. *People v. Knapp,* 180 Colo. 281, 505 P.2d 7; *People v. Barker,* 180 Colo. 28, 501 P.2d 1041.

### III.

Appellant also contends the court should have granted his motion for a mistrial after a prosecution witness mentioned that appellant was being held in the county jail on other charges. The incident was an isolated one. It arose as follows: Officer Thomas Butler of the Colorado Springs police department was testifying as to the circumstances surrounding his procurement of hair and fingernail samples from appellant. The deputy district attorney asked:

"Q. All right. He was not under arrest at that time?

"A. Yes, sir, he was incarcerated at the County Jail at that time on other charges.

"Q. All right. Did he volunteer to make this statement or give these items to you?

"A. When we arrived at the County Jail —"

An objection was interposed outside the presence of the jury. The deputy district attorney explained that it was a mistake and that the question probably should not have been so phrased. The circumstances were that appellant was in jail, charged with the rape of his brother's wife, at the time hair and fingernail samples were taken from him. The rape charge prompted his brother to abandon appellant's alibi-story as to appellant's whereabouts at the time of the murder.

None of these facts were ever before the jury. The trial court was later to deny admission of this rape charge and an additional rape charge involving a third woman as evidence of relevant similar transactions. At this juncture, however, the court ruled the reference to being held in jail was not detailed

enough to be prejudicial. The trial judge also cautioned the witness against making any further references to prior incarceration on other charges. The court offered to admonish the jury to completely disregard the statement. Counsel for appellant specifically requested that an admonition not be given.

■ In view of these circumstances, we perceive no abuse of discretion. A mistrial is the most drastic of remedies for prejudicial conduct. *People v. Anderson,* 184 Colo. 32, 518 P.2d 828. Its denial will not be disturbed on review unless it is apparent the trial court abused its discretion. *People v. Goldsberry,* 181 Colo. 406, 509 P.2d 801; *People v. Elliston,* 181 Colo. 118, 508 P.2d 379; *Fresquez v. People,* 178 Colo. 220, 497 P.2d 1246; *Valley v. People,* 165 Colo. 555, 441 P.2d 14.

■ We do not regard this as a case which requires reversal under *Stull v. People,* 140 Colo. 278, 344 P.2d 455. It is more akin to the situation in *People v. Scheidt,* 182 Colo. 374, 513 P.2d 446, where the reference to the prior crime was not the "focus" of the witness's remarks. Here, the reference to the incarceration on another charge was inadvertent. The nature and detail of that charge was not asked for or elicited. There was no further reference to the previous arrest or incarceration. We do not agree with appellant's arguments that any reference to a defendant's incarceration on other charges is per se prejudicial and requires a new trial. Rather, each case must be evaluated on its own facts. *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476; *People v. Sanchez,* 184 Colo. 25, 518 P.2d 818. We find no prejudicial error under the circumstances of this case.

IV.

■ Appellant assigns as error the admission of a photograph of the nude body of the deceased, showing stab wounds administered to the left chest and garrotting marks around the neck. This photograph was admitted along with several others, not objected to, which depicted the victim's body on the morgue table from several different angles. The photograph was referred to by the pathologist during his

testimony where he described the wounds of the victim. Appellant's objection to this photograph was that it was cumulative and unduly inflammatory.

As indicated, the photograph was relevant and illustrative of the pathologist's testimony of the wounds and therefore had probative value concerning the nature of the violence inflicted upon Shirley Webb. In view of this consideration, we cannot say its potential for inflaming the passions of the jurors outweighed its evidentiary value. These were matters for the trial court to determine and in the circumstances here we find no abuse of discretion. *People v. Jones,* 184 Colo. 96, 518 P.2d 819.

## V.

It is next contended that the trial court erred in permitting Dr. Urich to testify as to how the sexual intercourse was accomplished and concerning the position of the killer relative to the victim while the garrotting occurred. Dr. Urich is a medical doctor specializing in pathology and had been coroner of El Paso County for twenty years. In the course of his experience he had examined over three hundred homicidal deaths in which over thirty involved sexual crimes. It was his opinion based upon his examination of the deceased and the physical findings at the scene that the victim, whose body was found in the bedroom closet, had actually been killed in the bedroom. In his explanation of his reasons for this conclusion, he was permitted to testify to the matters objected to by appellant.

We find no error here in view of the admitted expertise of the witness by reason of his medical training, his specialization in pathology and his extensive experience in homicide investigations. As has so often been said, the qualifications of an expert and his competency to testify in particular areas are matters for the trial court's preliminary determination and absent a clear abuse of discretion such determination will not be overridden on review. *People v. Anderson,* 184 Colo. 32, 518 P.2d 828; *People v. DeLuna,* 183 Colo. 163, 515 P.2d 459; *People v. Chavez,* 182 Colo. 216, 511 P.2d 883. As a corollary, the weight to be accorded to the opinions of the

expert is strictly a matter for the jury's determination. *People v. King,* 181 Colo. 439, 510 P.2d 333; *Meader v. People,* 178 Colo. 383, 497 P.2d 1010; *Hampton v. People,* 171 Colo. 153, 465 P.2d 394.

We find no abuse of discretion in the present case in the allowance of this testimony and find this assignment to be without merit.

## VI.

Appellant's last contentions for reversal concern asserted errors in the jury instructions. We note initially that the instructions when taken and read together as a whole properly instructed the jury on first-degree murder, both premeditated and felony murder. The jury was not instructed on the lesser degrees of homicide, which were not issues in the case.

Appellant tendered an instruction on specific intent similar to that disapproved by this Court in *People v. Nace,* 182 Colo. 127, 511 P.2d 501, where there was a failure to identify the requisite specific intent referred to. It was, therefore, incumbent on the court to refuse the erroneous instruction.

We observe that the jury was properly instructed on the intent necessary to constitute first-degree premeditated murder. In addition to the instruction on general criminal intent, the court instructed the jury concerning the intent required by the statute in the following language, which we deem to be adequate:

"* * * You are instructed that to constitute murder in the first degree, the killing must have been done wilfully, deliberately, and with premeditation; that is, *intentionally,* sanely, and with prior deliberation, and without legal excuse or justification. 'Wilfully' as used in Indictment and in these instructions, means *'intentionally';* that is, not accidentally. 'Deliberately' means an *intent to kill,* executed by the slayer in a cool state of the blood, in furtherance of a former design, to gratify a feeling of revenge or to accomplish some other unlawful purpose. 'Premeditated design to kill' means a previously designed or formed *intention to kill.* But while the

law requires, in order to constitute murder in the first degree, that the killing should be wilful, deliberate and premeditated, still it does not require that the wilful intent, premeditation or deliberation should exist for any particular length of time before the crime is committed. It is not necessary that the killing should have been considered, brooded over, or reflected upon for a week, a day, or an hour. There may be no appreciable space of time between the *intent to kill* and the act of killing, and if sufficient deliberation was had to form a design or purpose to take life, and to put that design or purpose into execution by destroying life, then there was, in law, sufficient deliberation to constitute murder in the first degree, no matter whether the design to take life had been for a long time contemplated by the slayer, or whether the design to kill was formed by him at the instant of the fatal act. It is enough that the *intent to kill* preceded the fatal act although the act followed instantly." (Emphasis added.)

We consider appellant's other assertions of error concerning alleged deficiencies in the instructions, raised here on appeal for the first time, to be without merit.

■■■ Appellant was entitled to a fair trial but not a perfect trial. *People v. Sanchez,* 184 Colo. 25, 518 P.2d 818. In our view, appellant's rights were carefully observed in accordance with the requirements of due process, the jury was substantially instructed according to law, and appellant was afforded a fair and impartial trial.

The judgment is affirmed.