545 P.2d 1050 (1975)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Robert BOULIES, Defendant-Appellant.
No. 74-329.
Colorado Court of Appeals, Div. I.
May 20, 1975.
Rehearing Denied June 10, 1975.
*1051 John D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., David A. Sorenson, Mary Mullarkey, Asst. Attys. Gen., Denver, for plaintiff-appellee.
Rollie R. Rogers, Colorado State Public Defender, T. Michael Dutton, Deputy State Public Defender, Denver, for defendant-appellant.
Not Selected for Official Publication.
BERMAN, Judge.
Defendant, Robert Boulies, was convicted by a jury of aggravated robbery and first degree murder, and he appeals. We find no prejudicial error, and therefore affirm the judgment of conviction.
The evidence established that on the evening of October 26, 1971, defendant set out in a truck with two companions, Newbanks and Lutes, to scout the vicinity of Greeley for a possible burglary site. The truck belonged to Newbanks. After driving around and consuming beer, the trio stopped at Newbanks' home and picked up Newbanks' .22 caliber pistol, together with a clip containing nine shells.
The trio then continued their scouting while consuming more beer, and finally stopped where they could observe the flow of customer traffic at the nearby Westview Liquor Store. They then drove away and discussed, for approximately half an hour, how much money might be at the liquor store. They then drove to the rear of the liquor store, where defendant exchanged his coat for that of Lutes', because it contained inside pockets which would be used for the secreting of liquor. Defendant took the gun from the glove compartment of the truck, put it in his waistband, and disappeared around the corner of the building. A few minutes later he returned with two bottles of liquor, and the trio drove for approximately two miles, during which time defendant asked Newbanks and Lutes if they had heard screaming. They responded that they had heard none, and defendant indicated that the man in the liquor store kept yelling and hollering when he announced the robbery and ordered him to get down on the floor. Defendant also advised his companions that "the guy didn't have very much money," which later testimony developed was $189.41. The trio then took the gun back to Newbanks' home, and the money was divided. All of them then drove to Denver, where defendant left them and Newbanks and Lutes drove back to Greeley. While returning to Greeley, Newbanks and Lutes heard a radio report concerning a robbery and a killing at a liquor store in Greeley. Newbanks, upon arriving home, emptied the gun and noticed that it was short four shells.
The trio was arrested and charged with aggravated robbery and first degree murder. While incarcerated, Newbanks and Lutes separately and at different times spoke to the defendant about the incident, at which times defendant indicated to each that while he was robbing the liquor store, the gun had gone off accidentally, but he thought only liquor bottles had been hit by the bullets. Three empty shell cases identified as being from Newbanks' gun were found at the scene, and shell fragments found there were identified as being part of .22 caliber slugs. Defendant was convicted by a jury and sentenced to life imprisonment for first degree murder and 50 years to life for aggravated robbery.
Defendant's first contention is that the trial court erred in admitting into evidence, over his objection, three color slides. Two of these showed a front and back view of the victim's body, and the third showed the victim's liver, after it had been removed from the body, with a bullet track through it.
At trial, defendant objected to the admission of the slides asserting that they were inflammatory, cumulative, and lacked *1052 any probative force, especially in view of the fact that defendant was willing to stipulate to the cause of death. The trial court, after viewing the slides, held that they were not inflammatory and overruled defendant's objection.
Subsequently, during the pathologist's testimony, the three slides were enlarged by projection for the jury's view, and the pathologist specifically pointed out the entrance of the bullet on the front of the victim's abdomen just below the rib cage, the bullet exit mark on the back of the victim's chest, and the excised liver bisected to show the track of the bullet and the fragmentation of liver tissue.
As indicated, the color slides were used to illustrate the nature of the wounds found by the pathologist. While it is defendant's position that the pathologist's verbal description was sufficient to enlighten the jury as to the nature of the wounds, the slides accurately depicted the location and nature of the wounds found by the pathologist and were relevant to the jury's understanding of his testimony, and they therefore had probative value. Furthermore, the two slides depicting the body of the victim showed no signs of the autopsy later performed and were not full length depictions of the body, but rather were half body portrayals of the victim. The front view depicted the view from the upper part of the victim's mouth to his abdomen, and the back view was the upper portion of the body. The other slide, that of the excised liver, might accurately be described as in the nature of a clinical slide of a portion of the anatomy.
It was for the trial court to determine whether the admission of these slides would have such an inflammatory effect upon the jury that their admission should have been denied. People v. Strohm, Colo., 523 P.2d 973; People v. Lowe, Colo., 519 P.2d 344. We are unable to conclude that the trial court abused its discretion by permitting the admission of this evidence, nor do we view the slides as being so gruesome or gory that people of ordinary sensibilities would be revolted by them. "[W]e cannot say [their] potential for inflaming the passions of the jurors outweighed [their] evidentiary value." People v. Lowe, supra.
The district attorney was not required to accept the offer of the defense to stipulate to the cause of death in lieu of using the testimony of the pathologist and his use of the slides to explain his testimony. See State v. Zaerr, 110 Ariz. 585, 521 P.2d 1131. The defense is not, by offering to stipulate as to certain facts, permitted to direct the manner in which the state chooses to present its evidence, so long as the evidence is relevant and material to the issue and is not of such a character as to deliberately inflame or excite the passions and prejudices of the jury. See State v. Hokenson, 96 Idaho 283, 527 P.2d 487.
Defendant's last contention is that the circumstantial evidence presented at the trial was equally as consistent with his innocence as with his guilt and therefore insufficient to support his conviction.
The "reasonable hypothesis of innocence" test which defendant advances to support his contention has been specifically rejected in favor of the "substantial evidence" test with respect to both direct and circumstantial evidence. People v. Bennett, 183 Colo. 125, 515 P.2d 466. The evidence detailed above is ample to support a conclusion in the minds of reasonable men that defendant was guilty beyond a reasonable doubt. People v. Lowe, supra. Hence, the guilty verdict, being supported by substantial evidence, will not be disturbed on review.
Judgment affirmed.
COYTE and PIERCE, JJ., concur.