## No. 26547

## The People of the State of Colorado v. Thomas Edward Brake

(553 P.2d 763)

Decided August 23, 1976.

William H. Prendergast, for plaintiff-appellant.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, Robert C. Lehnert, Assistant, for defendant-appellee.

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

The appellant, Thomas Brake, brings this appeal from a conviction of assault in the first degree. We remand.

The appellant was arrested in the early morning hours of September 10, 1973, in connection with an assault on a young woman that had taken place earlier in the morning. The victim, Jane Candelario, had been assaulted at about 2:15 a.m. in the vicinity of East Third Avenue and Emerson Street, in the City and County of Denver, while walking home from her boy friend's house. The assailant apparently attempted to steal Miss Candelario's purse and when she resisted she was stabbed in the chest, back and legs. A description of one of two possible suspects was given to the police and witnesses provided a description of a light-colored, early model Rambler with dark paneling, which had been observed in the vicinity.

At approximately 3:30 a.m. the same morning, the police stopped a light-colored early model Rambler, near the scene of the assault. In the vehicle were Roger Wadlington and the appellant; a hunting knife was found under the front seat of the vehicle, with what appeared to be blood on the blade. Wadlington and the appellant were taken into custody.

The day after the arrest, the appellant signed a written confession, and two days after the arrest a second statement was made by the appellant. The appellant raises ten different grounds for reversal.

I.

First, the appellant contends that the knife, seized at the time of the arrest, was improperly admitted into evidence, since it was obtained as the result of an illegal search. The appellant asserts that the arrest itself was illegal and therefore the seizure of the knife cannot be justified.

We believe, however, that at the time the knife was seized the officer had probable cause to arrest the appellant. Testimony at trial indicated that the automobile and one of its occupants matched the description of the Rambler and one suspect given the police. Furthermore, the car was stopped in the vicinity of the assault, in the early morning hours, approximately one hour after the attack. Under these circumstances, the police possessed probable cause to arrest the appellant before the knife was seized.

In *People v. Lucero*, 182 Colo. 39, 511 P.2d 468 (1973), the police stopped a car near the scene of a robbery. The car matched the description of one seen at the site of the robbery. Approaching the car, the police

officer observed that one of the car occupants matched the description of a suspect. In upholding the seizure of evidence from underneath the front seat of the car, we stated:

"Having corroborated both descriptions by his own independent observations, Officer Jones *at that point* had probable cause to arrest the defendant and search the vehicle." 182 Colo. at 44, 511 P.2d at 471. (Citation omitted.)

Likewise, here the police had probable cause to arrest the appellant for the crime charged, and therefore seizure of the knife from the vehicle was lawful. *See Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *People v. Nanes*, 174 Colo. 294, 483 P.2d 958 (1971).

## II.

The appellant next contends that the trial judge improperly refused to allow voir dire of a prospective juror concerning whether school violence was one of the juror's reasons for leaving the teaching profession. The appellant asserts that since the alleged crime involved violence, it was material to know the juror's views about violence.

The propriety of questions to potential jurors on voir dire is within the discretion of the trial court, and its ruling will not be disturbed on appeal unless an abuse of discretion is shown. *People v. Buckner*, 180 Colo. 65, 504 P.2d 669 (1972); *Washington v. People*, 169 Colo. 323, 455 P.2d 656 (1969). In this regard, we note that the trial judge did permit defense counsel to ask the juror a question concerning her views toward violent crime. Thus, the trial judge did not abuse his discretion in this matter. Nor was the appellant denied a fair trial or due process of law as a result of the trial court ruling.

## III.

The appellant contends that the trial court erred in permitting the prosecution to endorse Roger Wadlington, the codefendant, as a witness on the day of trial. Wadlington testified against the appellant the same day.

The allowance of late endorsements of witnesses also lies within the discretionary power of the trial court. *People v. Buckner, supra; Corbett v. People*, 153 Colo. 457, 387 P.2d 409 (1963). The record in the instant case indicates that defense counsel was not caught by surprise by the requested late endorsement. Defense counsel stated that he was "preparing both ways" concerning whether Wadlington would or would not testify. Moreover, the appellant does not contend that the reason for the delay in endorsing Wadlington was attributable to carelessness or bad faith by the district attorney. Plea negotiations with Wadlington were in progress and were not finalized until the day of trial. In these circumstances, the trial court did not abuse its discretion by permitting the late witness endorsement. *See also Goldsberry v. People*, 149 Colo. 431,

369 P.2d 787 (1962). Thus, this case is very different from *Kloberdanz v. People*, 95 Colo. 30, 31 P. 2d 1111 (1934), relied upon by the appellant, where we referred to the "prejudice . . . of substantial rights" and the fact that the district attorney gave no reason for the delay in endorsement.

## IV.

■ The appellant argues that the trial judge should have granted his motion for judgment of acquittal following the prosecutor's opening statement. The appellant asserts that the opening statement failed to state a case. A review of the record indicates otherwise. The trial judge did not err in this regard. *See Mora v. People*, 172 Colo. 261, 472 P.2d 142 (1970); *People v. Gomez*, 131 Colo. 576, 283 P.2d 949 (1955).

## V.

Next, the appellant asserts that certain photographs of the vicinity of the crime were improperly admitted into evidence, both because an inadequate foundation was laid identifying the photographs and because they were of no probative value. The appellant further contends that admission of the knife and the knife sheath was improper, since they were not adequately identified since a chain of custody was not established, and since they were not connected with the crime.

The photographs were admitted into evidence after having been identified by Mrs. Marjorie Olson, a witness for the prosecution. Mrs. Olson lived in the vicinity of the crime and awoke early on the morning of September 10, 1973, after hearing screams. She observed the Rambler automobile, and heard cries for help from the victim. Mrs. Olson instructed her husband to call the police and was present with the victim after the police arrived. Mrs. Olson identified the photographs, Exhibits G and J, as being respectively, the front door of a building in the vicinity of the crime, and the street corner of Speer and Emerson, also in the vicinity of the assault.

■ The photographs were sufficiently identified to be admitted as evidence and, furthermore, they were admissible under the rules governing relevancy. It is well established that photographs may be used to portray, among other things, the scene of the crime. *Young v. People*, 175 Colo. 461, 488 P.2d 567 (1971).

Likewise, the knife and knife sheath properly were admitted into evidence. The police officer who seized the knife and sheath testified at trial that the knife and sheath, presented as Exhibit K-3, were the same knife and sheath seized by him. When pressed on the matter, he stated that the exhibits "appeared to be the same" items as those which he seized during the arrest. The trial judge ruled that the sheath was admissible, but held that the knife was not sufficiently identified and had to be admitted pursuant to chain of custody testimony. After testimony relating to chain of custody, the trial judge admitted the knife.

■ We believe both items, the knife and sheath, were sufficiently identified by the police officer to be admissible without showing a chain of custody. *See Claxton v. People*, 164 Colo. 283, 434 P.2d 407 (1967); *Bustos v. People*, 158 Colo. 451, 408 P.2d 64 (1965).

■ In any event, the knife was admissible since a proper chain of custody was shown. The knife and sheath, after the seizure, were placed in a lock seal envelope by Officer Reed and marked. The envelope was deposited with the police custodian's office. The lock seal envelope was transported to the Denver Forensic Laboratory, where an Officer Shaffer picked up the lock seal envelope and delivered it to the Colorado Bureau of Investigation. When the envelope was received at the C.B.I. the seal was unbroken. From the C.B.I. to the trial, the chain of custody was undisputedly established.

■ The appellant asserts that a break in chain of custody exists, since no one was able to state who removed the envelope from the custodian's office and took it to the forensic laboratory. However, the envelope seal was unbroken; therefore, the chain of custody was not deficient. *People v. Atencio*, 187 Colo. 226, 529 P.2d 636 (1974).

■ Further, the knife was adequately connected to the crime, since the codefendant, Wadlington, testified that the appellant removed a knife similar to Exhibit K-3 from the glove compartment of the auto prior to the attack. The victim was later found bleeding, and, according to Wadlington, when the appellant re-joined Wadlington, after his encounter with the victim, the knife was covered with blood. Certainly, this evidence was sufficient to connect the knife with the crime. *Reynolds v. People*, 172 Colo. 137, 471 P.2d 417 (1970); *Washington v. People*, 158 Colo. 115, 405 P.2d 735 (1965).

## VI.

The appellant argues that the trial court erred both in accepting a Dr. Jenkins as an expert in the field of medicine, and in the admission of testimony by Dr. Jenkins describing the wounds and subsequent treatment received by the victim. The appellant asserts, therefore, that the trial court should have granted his motion for mistrial, made during the testimony of Dr. Jenkins.

■ As we stated in *People v. Anderson*, 184 Colo. 32, 518 P.2d 828 (1974), "[t]he competency of an expert is for the trial court to determine, . . . and will not be grounds for reversal absent a clear showing of abuse of discretion." (Citation omitted.) *See People v. Lowe*, 184 Colo. 182, 519 P.2d 344 (1974); *People v. DeLuna*, 183 Colo. 163, 515 P.2d 459 (1973). The trial judge did not abuse his discretion in allowing Dr. Jenkins to testify as an expert. Dr. Jenkins was, at the time of trial, licensed to practice medicine in North Carolina and was a senior resident in thoracic surgery at the University of Colorado and affiliated hospitals. He treated the victim in the emergency room at Denver General Hospital and

for a period of six weeks following the attack.

Moreover, testimony describing the wound was proper as a recitation of what occurred as a result of the assault. *People v. Anderson, supra; Jorgenson v. People*, 174 Colo. 144, 482 P.2d 962 (1971). Thus, no error was committed in this regard.

## VII.

Next, the appellant contends that the conviction cannot be sustained, since there was no evidence of specific intent to cause serious bodily injury to the victim. We have stated in the past, however, that specific intent "may be inferred from the facts and circumstances surrounding the commission of an assault." *People v. Edwards*, 184 Colo. 440, 442, 520 P.2d 1041, 1042 (1974); *People v. Prante*, 177 Colo. 243, 493 P.2d 1083 (1972); *Baker v. People*, 176 Colo. 99, 489 P.2d 196 (1971).

In the instant case, the appellant used a knife, attacked the victim without warning, and caused very serious injuries. These circumstances, and others adduced at trial, are sufficient to warrant an inference of specific intent. *See People v. Edwards, supra.*

## VIII.

The appellant contends that eight of the nineteen jury instructions were erroneous in that they were inaccurate, or no evidence supported their being given, or they were not sufficiently precise. Further, the appellant asserts that he was entitled to an instruction on the lesser offense of assault in the third degree, relating to an act of criminal negligence.

A review of the instructions convinces us that they were accurate and sufficiently clear and precise.

The jury was instructed as to both first-degree assault and second-degree assault. However, there was no evidence supporting an instruction on criminal negligence, and therefore the trial court properly refused to give the tendered instruction. *See People v. Hansen,* 191 Colo. 175, 551 P.2d 710 (1976). As noted earlier, there was ample circumstantial evidence that the appellant acted with specific *intent* to inflict serious bodily injury. The only evidence presented by the defense relating to this contention was testimony by a psychiatrist, who stated that the appellant did not have specific intent to stab the victim and that he acted on an "impulse" to strike the woman. If the jury found this testimony persuasive, they might have acquitted the appellant on grounds that the requisite specific intent was lacking. There was no evidence, however, supporting a theory that the appellant acted negligently.

## IX.

Lastly, the appellant asserts that both statements given by him to the police were illegally obtained and therefore the trial court erred in denying a motion to suppress the statements. The appellant contends that the confessions were the fruit of an illegal arrest, that they were obtained in violation of the appellant's *Miranda* rights, and that the confessions were

not voluntary.

As noted above, the arrest of the appellant was not illegal. Further, the statements were made only after the appellant was informed of his *Miranda* rights, once by a county court judge and twice by the police. The appellant signed a written waiver of those rights before each statement was given. The trial court made specific findings, at the suppression hearing, that the appellant knew his rights, that he was not coerced or intimidated or threatened and that the statements were voluntarily given. The record supports these findings, and the confessions were clearly admissible therefore, as a matter of voluntariness. *See People v. Shearer*, 181 Colo. 237, 508 P.2d 1249 (1973); *People v. Smith*, 179 Colo. 413, 500 P.2d 1177 (1972).

The appellant asserts, however, that his *Miranda* rights were violated, since he asked for an attorney on a number of occasions, including immediately before he gave the first inculpatory statement. At the suppression hearing both police officers, present during the taking of the statements, testified that the appellant did not ask for an attorney at any time.

It is well established that once an accused asks for an attorney all questioning must end:.

"If, however, . . . [the defendant] indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." *Miranda v. Arizona*, 384 U.S. 436, 444-45, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 707 (1966).

We recently applied this principle in *People v. Harris,* 191 Colo. 234, 552 P.2d 10, when we affirmed a ruling suppressing a confession where the accused asked for an attorney, then signed a waiver of *Miranda* rights and made an inculpatory statement. We held:

"The defendant made a request for an attorney, and the police officers were thereby placed on notice that the defendant intended to exercise his constitutional rights. Admittedly, the demand was not in the most sophisticated or legally proper form, but it was adequate. At that point, all interrogation should have ceased until an attorney was made available to the accused." *Harris, supra.* at 4 - 5.

Further, it is clear that, if the appellant in the instant case did ask for an attorney before he made the first statement, then the second statement also is inadmissible, since it was tainted by the illegal procurement of the first. *Darwin v. Connecticut*, 391 U.S. 346, 88 S.Ct. 1488, 20 L.Ed.2d 630 (1968); *People v. Algien*, 180 Colo. 1, 501 P.2d 468 (1972).

The record here shows that the trial judge made no findings relating to whether or not the appellant did or did not ask for an attorney during the questioning or before the statement was made. Therefore, the case is remanded to the trial court, with instructions to make findings regarding this issue, based on the record or any further hearings the trial

court deems necessary. If the trial court finds that the appellant did ask for an attorney before he made statements, the conviction is reversed and a new trial is ordered. If the trial court finds that the appellant did not ask for an attorney, the judgment shall stand affirmed.

The judgment is remanded for further proceedings consonant with the views expressed herein.

MR. JUSTICE LEE does not participate.