The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Cecil MOODY, Defendant-Appellant.

No. 80SA168.

Supreme Court of Colorado,
En Banc.

June 8, 1981.
Rehearing Denied June 29, 1981.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Robert C. Lehnert, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, Steven H. Denman, Michael Heher, Deputy State Public Defenders, Denver, for defendant-appellant.

HODGES, Chief Justice.

Defendant Cecil Moody appeals his conviction for aggravated robbery[1] and the sentence imposed by the trial court. We affirm.

Defendant's conviction stems from the armed robbery of Angelo's Pizza Parlor in Denver. The evidence at trial indicated that at approximately 10:00 p. m. on January 5, 1975 defendant entered the pizza parlor carrying a sawed-off shotgun. He robbed the restaurant and all of its patrons. Throughout the robbery the defendant brandished the shotgun in a threatening manner.

Following a jury trial, defendant was found guilty of aggravated robbery and the trial court sentenced him to a term of 20 to 35 years imprisonment.

## I.

Initially, defendant asserts that his conviction is invalid because the trial court, on its own motion, failed to hold a preliminary hearing after the defendant was found to be competent to stand trial. The argument is without merit.

Following defendant's arrest, a preliminary hearing was conducted on January 7, 1976 and probable cause was found to bind defendant over for trial. On January 20, 1976, defendant entered a plea of not guilty, and on February 17, 1976, defendant changed his plea to not guilty by reason of insanity. On August 4, 1976, the trial court found that the defendant was incompetent to stand trial, and he was committed to the state hospital for treatment.

1. Section 18–4–302, C.R.S.1973 (now in 1978 Repl. Vol. 8).

Following a hearing on January 14, 1977, the trial court determined that the defendant had been restored to competency. No additional preliminary hearing was requested or conducted after the defendant was adjudged competent. In June 1977, defendant was found to have been sane at the time of the alleged offense, and the jury trial finally commenced on September 6, 1977.

Defendant argues that under this court's decision in *Schwader v. District Court*, 172 Colo. 474, 474 P.2d 607 (1970), the trial court erred in not *sua sponte* ordering a second preliminary hearing after defendant was determined to be competent. Specifically, defendant points to the following language in *Schwader*:

"[B]ecause of the nature of a preliminary hearing, the right to counsel at a preliminary hearing reaches constitutional proportions. [Citations omitted.] But the right to counsel is a meaningless right unless the accused has the capacity to confer with counsel regarding the accusation, the nature of the proceedings, and the testimony of the witnesses.... [W]hen the preliminary hearing is held first and the sanity hearing second, if the outcome of the sanity hearing is that the defendant is presently insane, then upon his return to sanity another preliminary hearing must be held."

Defendant's reliance on the *Schwader* case is misplaced. In *Schwader*, the district attorney requested a preliminary hearing, but before it could be conducted, the issue of the defendant's competency was raised. In that factual context, this court ruled that under the then existing statutory scheme, the competency determination had to be made before the preliminary hearing was conducted.

In the instant case, we note that the issue of defendant's competency was not raised until forty days after the preliminary hearing was conducted. In addition, the statutory scheme has been changed since the *Schwader* decision to provide for either a grand jury indictment or a preliminary hearing prior to trial on the insanity issue.[2]

■ There is no federal constitutional requirement for a preliminary hearing in every criminal case brought by information. *People ex rel. Farina v. District Court*, 185 Colo. 118, 522 P.2d 589 (1974) (hereinafter *Farina I*); *Falgout v. People*, 170 Colo. 32, 459 P.2d 572 (1969); *see Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).[3] However, section 16–5–301, C.R.S. 1973 (1978 Repl. Vol. 8), statutorily confers the right to demand and receive a preliminary hearing upon "[e]very person accused of a felony ... by direct information, complaint, or felony complaint ..."

■ The statutory right to receive a preliminary hearing is not absolute, and requires that either the defendant or his attorney, or the prosecuting attorney, file a written motion demanding the preliminary hearing. If the defendant fails to file a written motion for a preliminary hearing, he is deemed to have waived his right to demand one. *Farina I, supra; People ex*

---

**2.** Section 16–8–103(3), C.R.S.1973 (1978 Repl. Vol. 8), provides:

"If there has been no grand jury indictment or preliminary hearing prior to the entry of the plea of not guilty by reason of insanity, the court shall hold a preliminary hearing prior to the trial of the insanity issue. If probable cause is not established, the case shall be dismissed, but the court may order the district attorney to institute civil proceedings pursuant to article 10 of title 27, C.R.S. 1973, if it appears that the protection of the public or the accused requires it."

**3.** Defendant argues that *Gerstein v. Pugh, supra*, requires that there be a judicial determination of probable cause before an accused may be detained following arrest. However, the Supreme Court's ruling in *Gerstein* is much more limited. In that case, the court ruled unconstitutional a Florida procedure which allowed a person arrested without a warrant and charged by information to be jailed pending trial *without any opportunity for a probable cause determination*. The court stopped far short of *requiring* that a preliminary hearing be held in every case brought by information.

Our statutes and rules of criminal procedure dealing with a preliminary hearing are in clear compliance with the requirements of *Gerstein v. Pugh, supra. See* section 16–5–301, C.R.S. 1973 (1978 Repl. Vol. 8); Crim.P. 5; Crim.P. 7.

*rel. Farina v. District Court*, 184 Colo. 406, 521 P.2d 778 (1974) (hereinafter *Farina II* ); Crim.P. 5(a)(5).

■ The defendant was represented by court-appointed counsel when the trial court determined that he had regained competency.[4] Defendant concedes that no motion for a preliminary hearing was made. Consequently, we must conclude that by his silence defendant waived any right he may have had to a preliminary hearing following his return to competency. *See Farina I, supra; Farina II, supra*; Crim.P. 5(a)(5).

■ Defendant next asserts that trial counsel's failure to include in his motion for new trial the issue of the trial court's failure to conduct a preliminary hearing after defendant's return to competency constituted a denial of defendant's constitutional right to effective assistance of counsel. We do not agree.

■ Defense counsel did not request a preliminary hearing following defendant's return to competency, nor did he mention the failure of the trial court to conduct such a preliminary hearing in his motion for new trial. In our view, the decision not to seek a second preliminary hearing could have been a matter of trial strategy. "Mere disagreement as to trial strategy does not equate with ineffective assistance of counsel." *People v. McCormick*, 181 Colo. 162, 508 P.2d 1270 (1973); *see Morse v. People*, 180 Colo. 49, 501 P.2d 1328 (1972).

■ Defendant's argument that his trial counsel lacked authority to waive defendant's right to a preliminary hearing is also without merit. In *Steward v. People*, 179 Colo. 31, 498 P.2d 933 (1972), we reviewed the A.B.A. Standards for Criminal Justice and stated:

"Certain decisions relating to the conduct of the case are ultimately for the accused and others are ultimately for defense counsel. The decisions which are to be

made by the accused after full consultation with counsel are: (i) what plea to enter; (ii) whether to waive jury trial; (iii) whether to testify in his own behalf. The decisions on ... what trial motions should be made, and all other strategic and tactical decisions are the exclusive province of the lawyer after consultation with his client."

Even if it was oversight on the part of defendant's trial counsel to fail to raise the issue of the second preliminary hearing, we cannot say in this case that the oversight alone constituted ineffective assistance of counsel. Justice does not require errorless representation. *People v. White*, 182 Colo. 417, 514 P.2d 69 (1973). A review of the whole course of the proceedings and attending circumstances convinces us that there was no denial of fundamental fairness. *See Brubaker v. Dickson*, 310 F.2d 30 (9th Cir. 1962); *People v. White, supra.*

## II.

Defendant next argues that his conviction must be reversed because the trial court improperly denied him his constitutional right to represent himself. In our view, the trial court's denial of defendant's motion to proceed *pro se* was not error.

■ Under the provisions of the Colorado Constitution, a criminal defendant is constitutionally entitled to defend himself, *Colo.Const.* Art. II, Sec. 16, provided he "*has an intelligent understanding* of the consequences of so doing." (Emphasis in the original.) *Reliford v. People*, 195 Colo. 549, 579 P.2d 1145 (1978), *cert. denied*, 439 U.S. 1076, 99 S.Ct. 851, 59 L.Ed.2d 43 (1979); *Martinez v. People*, 172 Colo. 82, 470 P.2d 26 (1970).[5] However, under the peculiar facts of this case, the trial court properly acted within its discretion in denying defendant's motion to proceed *pro se.*

4. We note that defendant was represented by different counsel in this appeal. At trial, the court appointed a private attorney to represent the defendant. On appeal, defendant is represented by the Public Defender's Office.

5. The Sixth Amendment to the United States Constitution also protects a defendant's right to represent himself. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

Trial of defendant's case began on September 6, 1977 with the selection of a jury. Shortly after the defendant was taken into the courtroom where the jury panel was awaiting *voir dire*, defense counsel requested a meeting in chambers. At that meeting, defendant challenged the composition of the jury panel.[6] Specifically, the defendant asserted that his right to a jury of his peers was being denied because only one of the forty veniremen was black.[7] The trial court denied defendant's motion challenging the composition of the jury because defendant had presented no evidence in support of his challenge and because the challenge did not comply with the provisions of section 13–71–113, C.R.S.1973.[8]

Following the trial court's denial of defendant's challenge to the composition of the jury, defendant stated that he would not participate in the trial if the jury panel was not reconstituted, and that he would disrupt the proceedings if they were conducted in his presence. He asked that he be allowed to remain in the holding cell during the course of the trial.[9] The trial judge advised the defendant of his right to be present in a number of instances during the trial, and encouraged him to do so. Because of the defendant's continuing threats

6. Section 13–71–113, C.R.S.1973, dealing with challenges to the selection of jury panels, states:

"(1) Within seven days after the moving party discovered or by the exercise of due diligence could have discovered the grounds therefor ... a party may move to stay the proceedings, and in a criminal case to quash the indictment, information, or complaint, or for other appropriate relief on the ground of substantial failure to comply with this article in selecting the ... petit jury.

(2) Upon motion filed under subsection (1) of this section containing a sworn statement of facts which, if true, would constitute a substantial failure to comply with this article, the moving party is entitled to present in support of the motion the testimony of the jury commissioner and clerk, any relevant records and papers not public or otherwise available used by the jury commissioner or the clerk, and any other relevant evidence. If the court determines that in selecting ... a petit jury there has been a substantial failure to comply with this article, the court shall stay the proceedings pending the selection of the jury in conformity with this article, quash an indictment, information, or complaint, or grant other appropriate relief."

7. Defense counsel challenged the composition of the jury panel stating:

"[M]y client at this time would like to make a motion, and that is that he would like to challenge the racial constitution of the 40 members of the prospective panel....

"And, specifically, it's my client's viewpoint ... that the fact that there's only one black out of 40 individuals who are going to be called ... prevents him from having a fair trial and does not allow him due process.

"Therefore, he objects strenuously to this makeup of the 40 individuals and requests that at least, at least 20 black members or certainly a percentage equal to the population of the City and County of Denver, at least be among the 40 individuals who will be called upon to sit in judgment of him...."

8. Subsection (3) of section 13–71–113, C.R.S. 1973, provides:

"(3) The procedures prescribed by this section are the exclusive means by which a person accused of a crime, the state, or a party in a civil case may challenge a jury on the ground that the jury was not selected in conformity with this article."

9. The following exchange between the defendant and the trial judge took place during the discussion in chambers concerning the challenge to the jury panel:

"THE DEFENDANT: ... I feel like this is a sham and a charade as it is, and I refuse to take part in a trial unless I can have—I am a black, I want six blacks on my jury, and I want people more in my age group on my jury....

"If you are going to have a trial, have one without me, and you can have them take me back to the Chambers, because I refuse to take part in this.

\* \* \* \* \* \*

"THE COURT: All right. With respect to the motion challenging the jury panel for cause, as the Court indicates, it requires—denies that motion....

"Now, let me say this, Mr. Moody. I've ruled that, that your motion is denied. Now, we are going to have a trial.

"THE DEFENDANT: You have it without me, Judge.

\* \* \* \* \* \*

"THE COURT: Are you going to behave?

"THE DEFENDANT: No, I am not. You should have them take me out of here. The best thing to do would be to take me and leave me in the cell .... I am not going to accept what I see is flagrant violations of my rights or my constitutional right. No. I am not going to sit there."

to disrupt the proceeding, the trial judge ordered that the defendant be taken to the holding cell.[10]

The defendant subsequently filed a written *pro se* motion captioned "Motion for Reconsideration of Defendant's Motion for Mistrial." That motion again challenged the composition of the jury panel and requested that the trial judge order a mistrial. The trial court denied defendant's motion on September 7, 1977.

It was at this point in the proceedings that defense counsel, on behalf of the defendant, filed defendant's motion seeking leave to proceed *pro se*. The motion stated in relevant part:

"The Court has determined to proceed without this Defendant and this Defendant has no choice but to abide by the Court's ruling as he has determined not to be present unless at least six black juror panel members be added to the current panel of thirty-nine white juror panel members.

"That appointed counsel ... cannot possibly adequately represent this Defendant without the Defendant's presence at trial. "WHEREFORE, it is the desire of this Defendant to proceed *pro se* and that the current trial be declared a mistrial and another trial date be selected wherein this Defendant can represent himself."

It is clear to us from the text of this motion and from the circumstances surrounding its filing that defendant's desire to represent himself was contingent upon the granting of a motion for mistrial and the recomposition of the jury panel to include more black members.

The constitutional guarantees of due process and trial by jury require that juries be selected from "a representative cross-section of the community." *See People v. Sepeda*, 196 Colo. 13, 581 P.2d 723 (1978) and cases cited therein. However, there is no constitutional requirement "that each petit jury reflect the exact ethnic proportion of the population to which the defendant belongs." *Id.; see Bary v. United States*, 248 F.2d 201 (10th Cir. 1957). Defendant's assertions of unfair composition of the jury panel without some evidence of systematic exclusion, *see United States v. Test*, 550 F.2d 577 (10th Cir. 1976), did not require that the trial court grant the motion for mistrial. To justify the granting of a mistrial, the grounds must be "substantial and real." *Maes v. District Court*, 180 Colo. 169, 503 P.2d 621 (1972). Here, the trial court exercised its sound discretion and denied defendant's motion for mistrial. We will not disturb that judgment on review here, where there has been no showing of an abuse of the trial court's discretion. *See, e. g., People v. Saars*, 196 Colo. 294, 584 P.2d 622 (1978); *People v. Sexton*, 192 Colo. 81, 555 P.2d 1151 (1976); *People v. Lowe*, 184 Colo. 182, 519 P.2d 344 (1974); *Brown v. People*, 132 Colo. 561, 291 P.2d 680 (1955); *Kelly v. People*, 121 Colo. 243, 215 P.2d 336 (1950).

Although a criminal defendant has a constitutional right to defend himself, *Colo. Const.* Art. II, Sec. 16; *Reliford· v. People, supra; Martinez v. People, supra; see Faretta v. California, supra*, there was no violation of that right in this case where the defendant conditioned the exercise of that right upon the trial court's grant of a motion for mistrial.[11] *Compare Faretta v. California, supra.*

### III.

Defendant maintains that his conviction is invalid because the trial court

---

10. The trial judge encouraged the defendant to return to the courtroom whenever he would not disrupt the proceedings:

"THE COURT: ... [P]lease understand any time that you want to come down here to the courtroom and be quiet and not tell me that you are going to be disruptive, then you can do so, just let the Sheriffs known, and I will have you brought down here."

11. In reaching our decision today, we have not considered the fact that the defendant delayed until after *voir dire* of the jury panel had begun before filing his motion to proceed *pro se*. Consequently, we make no judgment regarding the significance of delaying until the eleventh hour to file a motion to proceed *pro se* with respect to a defendant's power to exercise that constitutionally guaranteed right.

improperly required that he appear before the jury bound and gagged. Under the facts of this case, the trial court's action in this regard was fully justified.

As a part of its case against the defendant, the prosecution sought to have one of its witnesses make an in-court identification of the defendant as the man who robbed the pizza parlor.[12] The trial court ruled that the prosecution was entitled to present such evidence, and ordered that the defendant be brought into the courtroom for the identification.

In preparation for the in-court identification, and outside of the presence of the jury, the trial judge questioned the defendant regarding how he would conduct himself in front of the jury. It was only after the defendant had reiterated his intention to be disruptive in the presence of the jury that the trial judge ordered him to be brought into the courtroom bound and gagged.[13]

Following the in-court identification, at which the prosecution witness identified the defendant as the man who robbed the restaurant, the defendant was returned to the holding cell. The trial judge instructed the jury that the fact that the defendant appeared before them bound and gagged was not to have an influence on their verdict.

█ · Defendant now asserts that it was reversible error to require him to appear before the jury bound and gagged *before* he had actually been disruptive. This argument has no merit under the facts of this case. Where it is necessary to preserve security or order in the courtroom, the trial judge may order a defendant restrained. *People v. Rogers*, 187 Colo. 128, 528 P.2d 1309 (1974); *see Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); *see also Lucero v. Lundquist*, 196 Colo. 95, 580 P.2d 1245 (1978); *Montoya v. People*, 141 Colo. 9, 345 P.2d 1062 (1959); *Eaddy v. People*, 115 Colo. 488, 174 P.2d 717 (1946). The defendant was fully informed that the trial court could not allow him to disrupt the trial. The trial judge on several occasions advised the defendant that if he persisted in his threats to disrupt the trial, he would have to be bound and gagged when brought before the jury for an in-court identification. The defendant nevertheless continued to threaten that he would be disruptive if not bound and gagged. In these circumstances, the trial judge acted properly in ordering that the defendant be bound and gagged while in the courtroom during the identification testimony. *See Illinois v. Allen, supra; Lucero v. Lundquist, supra; People v. Rogers, supra; Montoya v. People, supra; Eaddy v. People, supra.*

█ In addition, it was not error for the trial court to order the defendant bound and gagged before he had actually disrupt-

---

**12.** In a discussion out of the hearing of the jury, the district attorney explained why he requested the in-court identification as follows: "Your Honor, I think the record should reflect my purpose in requesting that he [the defendant] be brought down and in not agreeing to a stipulation as to this witness is not to try to introduce any type of prejudicial matter into the court or into trial; however, this case is, and depends solely upon identification. This witness is the sole identification witness, and I think that ... I need to have her make an open court identification, and I'm not trying to, by insisting upon this, trying to introduce any kind of error into it."

**13.** Immediately before the trial court ordered the defendant bound and gagged, the defendant stated:
"THE DEFENDANT: I most certainly do not intend to go along with the railroad of Cecil Moody to whichever position anybody wants to take him, no. I will not sit here and go along with this. I can't.
"THE COURT: You are going to be disruptive?
"THE DEFENDANT: I am going to do whatever is necessary to remove myself from this—
"THE COURT: You are not going to sit there and be quiet?
"THE DEFENDANT: No."
After the defendant was restrained but before he was gagged, the trial judge asked again about his conduct:
"THE COURT: Now, Mr. Moody, are you going to be quiet or do you want to be gagged?
"THE DEFENDANT: No, I am not going to be quiet.
"THE COURT: All right, you are going to have to be gagged then."

ed the proceedings. Where, as here, the defendant continually threatens to be disruptive, the trial court is justified in restraining the defendant to prevent the threatened disruption.[14] *See A.B.A. Standards for Criminal Justice*, 15–3.1(c), commentary at 15.81 (2d Ed.1980); *see also People v. Shackelford*, 182 Colo. 48, 511 P.2d 19 (1973).

The defendant also argues that the trial court erred in requiring him to appear bound and gagged for the reading of the verdict. However, immediately before the jury was brought into the courtroom to deliver its verdict, the trial judge again questioned the defendant regarding his conduct. The defendant insisted that he would be disruptive if not restrained when the jury presented its verdict. Therefore, for the reasons stated above, it was not error for the trial court to order the defendant restrained to preserve the security and order of the courtroom.

### IV.

Defendant asserts that a sentence of 20 to 35 years imprisonment for aggravated robbery is unduly harsh.

In reviewing this sentence for excessiveness, we must consider the nature of the defendant's offense, the character of the defendant, and the public interest in safety and deterrence. *E. g., People v. Trujillo*, Colo., 627 P.2d 737 (1981); *People v. Cohen*, Colo., 617 P.2d 1205 (1980); *People v. Warren*, Colo., 612 P.2d 1124 (1980); *Triggs v. People*, 197 Colo. 229, 591 P.2d 1024 (1979); *People v. Duran*, 188 Colo. 207, 533 P.2d 1116 (1975). Applying those considerations to this case, we believe that the sentence imposed was appropriate. The crime was committed with the use of a particularly dangerous weapon, a sawed-off shotgun. The defendant has three prior felony convictions, several misdemeanor convictions, and a juvenile record. At the time sentence was imposed, the defendant was thirty-one years of age. In this case, there is no sound basis for saying that the trial court abused its discretion. *See People v. Cohen, supra; People v. Warren, supra; Triggs v. People, supra; People v. Duran, supra.*

The defendant also argues that he is entitled to be resentenced under the presumptive sentencing provisions of either the 1977 version of House Bill 1589, Colo.Sess.Laws 1977, Ch. 216, 18–1–105 at 867, or the 1979 version of House Bill 1589 (codified in section 18–1–105, C.R.S. 1973 (1980 Cum.Supp. to 1978 Repl. Vol. 8)). The arguments advanced by the defendant have been resolved adversely to him in *People v. McKenna*, Colo., 611 P.2d 574 (1980), and we continue to adhere to that decision. *See, e. g., People v. Trujillo, supra*, and cases cited therein.

Judgment affirmed.

14. We are in complete agreement with the analysis of the problem offered by Judge Flowers in his ruling to deny defendant's motion for mistrial:

"The Defendant at the in-camera hearing prior to the appearance of the Defendant before the jury clearly and unequivocally indicated and stated to the Court that he would be disruptive before the jury if he were not bound and gagged. And it was based upon his representations that the Court directed that he be bound and gagged ... and I have no doubt but that Mr. Moody would have carried out his statements had he not been bound and gagged and chained and handcuffed. He would have disrupted this trial. "It becomes a question ... of the lesser of two evils. Do you bring the jury in and let Mr. Moody disrupt the trial by statements and perhaps a physical altercation here in the courtroom, and then expect the jury to disregard what they see and hear; or, do you take what I consider to be the more reasonable alternative and ... have the Defendant bound and gagged ... so that, at least, there's no disruption of the orderly processes of the trial? And I felt that and do feel now that ... [the second alternative is] the lesser of the two evils."