527 P.2d 487

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Fred W. HOKENSON, Defendant-Appellant.**

No. 11239.

Supreme Court of Idaho.

Oct. 18, 1974.

**284**

Allen R. Derr and David Lee Posey, Derr, Derr, Walters & Cantrill, Boise, for defendant-appellant.

W. Anthony Park, Atty. Gen., James P. Kaufman, Asst. Atty. Gen., Boise, Roy E. Mosman, Pros. Atty., Lewiston, for plaintiff-respondent.

DONALDSON, Justice.

Appellant Fred W. Hokenson, armed with a homemade bomb and a knife, entered Dean's Drug Center, Lewiston, on the evening of January 13, 1972 with the intent to commit robbery. The resulting course of events ended with the death of Officer Ross D. Flavel. In June, 1972, trial was held in the Second Judicial District Court for Nez Perce County and a jury found the appellant guilty of murder in the first degree. Judgment of conviction was entered and sentence of life imprisonment was imposed. This appeal is from that judgment.

On the evening of January 13, 1972, Kent Dean, owner and manager of Dean's Drug Center, Lewiston, received a call from an individual (later identified as appellant Fred W. Hokenson) asking him to return to the store and fill a prescription which was urgently needed. Upon agreeing to do so, Mr. Dean, accompanied by his wife and two small sons, returned to the store arriving shortly after 7:00 p. m. After a short wait, appellant Fred W. Hokenson entered the rear of the Drug Center wearing a gas mask and carrying a sack close to his shoulder in his right hand. He stated, "Nobody moves, nobody gets hurt."

Kent Dean immediately raced over to the appellant and grabbed him in a bear hug. The two men struggled, rolled against the counter, and Dean obtained a headlock on Hokenson. Hokenson then stated that he had a bomb. Mr. Dean asked his wife to call the police and to get his gun. While she was doing so, the two men fell to the ground and the appellant again mentioned the bomb. Dean managed to grasp the sack the appellant was holding and to slide it approximately ten feet away. Upon coming to rest, cylindrical rods could be seen protruding from the sack's top.

While both men were still on the floor Dean heard the appellant say, "Okay, I have a knife and this is it." Dean felt the knife at the back of his neck but changed his position and managed to wrestle it away.

Mrs. Dean called the police and returned to the rear of the store. She was holding a gun on the appellant and Mr. Dean was still grasping Hokenson in a headlock when the police arrived. Officer Ross D.

Flavel entered the store through the rear door and upon learning the facts started handcuffing Hokenson. After securing appellant's left wrist, he told Mrs. Dean that another officer, Tom Saleen, was at the front of the store. Mrs. Dean promptly let him in and the two officers along with Mr. Dean completed the task of handcuffing Hokenson.

Officer Flavel then left the store and backed the patrol car to the rear door. Upon his return Mrs. Dean mentioned the bomb. Officer Flavel approached the device, picked it up and identified it as being a bomb. Some conflict then exists in the testimony concerning the following events. Officer Saleen testified that Officer Flavel began pulling wires out of the device and that Hokenson stated that it would make no difference since they only had thirty seconds to live.[1] The Deans testified that Officer Flavel merely had his hands on the sack at the time of Hokenson's statement and subsequent explosion. Nonetheless, the device did explode killing Officer Flavel and injuring Officer Tom Saleen and Kent Dean.

The following morning two handwritten notes were found near the rear of the store. One established drugs as being the object of the robbery and the other contained a threat against Dean's family.

The appellant seeks reversal on the following grounds:

*Asserted error in allowing into evidence photographs of the body and the cap and notebook of the deceased.*

Two black and white photographs, taken at the morgue, of the deceased officer's body along with the remains of his cap and notebook were entered into evidence over timely objection. The appellant contends that the above evidence was irrelevant to any material issue in the case and as such served only to inflame the passions of the jury. We disagree.

In order for evidence to be admissible it must be relevant and material. Mountain States Telephone & Telegraph Co. v. Jones, 76 Idaho 241, 280 P.2d 1067 (1955). Relevance has been defined by this Court in State v. Marlar, 94 Idaho 803, 498 P.2d 1276 (1972) as follows:

"Relevancy, as defined in the Idaho cases, encompasses two main aspects. The first, traditionally denominated 'materiality,' requires that the issue for which the specific evidence is offered to prove be a material issue in the case. The second aspect of relevancy concerns the probative value of the offered evidence. Evidence offered to prove a material issue in the case is not relevant unless it logically tends to prove or disprove that issue." 94 Idaho 809, 498 P.2d 1282.

The appellant offered to stipulate to the death and dismemberment of the body prior to the introduction of the above evidence but the stipulation was refused. As such, he argues that the photographs, cap and notebook are immaterial since they are offered only to prove facts not in issue.

■ Appellant pleaded not guilty to murder under I.C. § 18–603 applicable at the time.[2] It reads as follows:

"18–603. *Murder.*—(1) Except as provided in section 18–604(1)(b) of this code, criminal homicide constitutes murder when:

(a) it is committed purposely or knowingly; or

(b) it is committed recklessly under circumstances manifesting extreme indifference to the value of human life. Such recklessness and indifference are presumed if the actor is engaged or is an accomplice in the commission of, or an attempt to commit, or flight after committing or attempting to commit robbery, rape, or deviate sexual intercourse by force or threat of force, arson, burglary, kidnaping or felonious escape.

1. The remains of the device were sent for F.B.I. analysis and no evidence of a timing device was found.

2. Former I.C. § 18–603 (S.L.1971, Ch. 143, Sec. 1, p. 676) was repealed effective April 1, 1972.

(2) Murder is a felony of the first degree, but a person convicted of murder may be sentenced to death, as provided in section 18–607 of this code."

The not guilty plea placed in issue the death and material allegations of the information. It is the duty of the state to prove all the material elements of the crime charged,[3] even where the defendant concedes the fact and cause of death. State v. Hatton, 95 Idaho 856, 522 P.2d 64 (1974); State v. Campbell, 500 P.2d 21, 30 (1972); State v. Adams, 76 Wash.2d 650, 210 Kan. 265, 458 P.2d 558, 566 (1969), rev'd on other grounds, 403 U.S. 947, 91 S.Ct. 2273, 29 L.Ed.2d 855 (1971). To establish murder under I.C. § 18–603, the material elements consisted of showing that the homicide was committed recklessly under circumstances manifesting extreme indifference to the value of human life, or that the homicide was committed while engaged in the commission of, attempt to commit, or flight after the crime in question. Operating under the duty of proving the above material elements beyond a reasonable doubt, the state must be allowed to offer any relevant evidence in the showing of its case that does not expose the defendant to unnecessary prejudice. The offer of stipulation by the appellant is merely an offer and need not be accepted. To decide otherwise would allow the defendant the option of directing the state's case through the use of timely stipulation.

■ The state, having satisfied the initial test of materiality in *Marlar*, next faces the issue of relevancy. Do the photographs, mutilated cap and notebook logically tend to prove or disprove the recklessness with which the appellant acted? We believe they do. The evidence shows the brutal effect of the bomb and the atrociousness with which the appellant acted. Weighed with the fact Hokenson had worked with dynamite in the past, the evidence is probative of the reckless and complete indifference towards the value of human life with which he acted.

The appellant calls special attention to the admission of the photographs of the body. The general rule for the admission of such evidence was set forth in State v. Martinez, 92 Idaho 183, 188, 439 P.2d 691, 696 (1968). We there stated:

"* * * photographs of the victim in a prosecution for homicide, duly verified and shown by extrinsic evidence to be faithful representations of the victim at the time in question are, *in the discretion of the trial court, admissible in evidence as an aid to the jury in arriving at a fair understanding of the evidence, proof of the corpus delicti, extent of injury, condition and identification of the body, or for their bearing on the question of the degree of atrociousness of the crime, even though such photographs may have the additional effect of tending to excite the emotions of the jury."* [4] (emphasis added)

In the case of State v. Campbell, 210 Kan. 265, 500 P.2d 21 (1972) the Supreme Court of Kansas stated:

"Even where the defendant concedes the victim's death and the cause of death, it is incumbent upon the prosecution to prove as a part of its case in chief all elements of the crime charged; and photographs to prove the elements of the crime, including the fact and manner of death, and the violent nature of the death, and to corroborate the testimony of other witnesses, are relevant and admissible." 500 P.2d at 30.

■ No special emphasis was placed upon the photographs in question. They faithfully and accurately represented the condition, nature and extent of injury to the body. Such condition bears upon the reckless indifference to human life, and the violent nature of the act, and corroborates testimony of other witnesses. Ad-

---

3. I.C. § 18–112 (S.L.1971, Ch. 143, Sec. 1, p. 639) was repealed effective April 1, 1972.

4. *See also* State v. Beason, 95 Idaho 267, 506 P.2d 1340 (1973); State v. Dillon, 93 Idaho 698, 471 P.2d 553 (1970).

mission of photographs rests largely within the discretion of the trial judge, and since no abuse of discretion has been shown, we consider them properly admitted even though they may have the additional effect of tending to excite the emotions of the jury.[5] Their relevancy and probative value outweigh their prejudicial effect.

*Asserted error in allowing into evidence repeated statements concerning the condition of the body and four pieces of evidence concerning the officer's shoe.*

The appellant contends that the above evidence was rendered cumulative and prejudicial by the offer of stipulation to death and dismemberment. We disagree.

As before stated, the duty was on the state to prove the material elements of the crime as charged under I.C. § 18–603. Of primary importance is the appellant's extreme indifference to the value of human life. The state called eye witnesses of the crime to testify to what happened during the entire episode along with results. The record shows that the trial court permitted Kent Dean to testify that the body had been mutilated—one arm and one leg being severed. Janice Dean testified that a leg had been severed and that the body looked like a bundle someone had thrown against the counter. Officer Hank Whittington stated that both legs and the left arm had been blown off.

■■ While cumulative, this testimony was admissible, and the fact that the testimony was substantially the same adds to its credibility. Corroborative evidence is admissible where its probative value outweighs its inflammatory effect, and this is generally a question for the trial court. No special emphasis was placed on the condition of the body—the witnesses simply described the situation that they saw. Therefore, the trial court did not err in allowing its admission.

■ The appellant further contends that the admission of four pieces of evidence concerning the deceased officer's shoe (two photographs, the shoe and leather remains) was cumulative and prejudicial. Following the earlier rationale set forth in *Martinez*, we hold the evidence admissible since it is illustrative of the force of the bomb.

*Asserted error in denying appellant's motion for acquittal, or in the alternative, the verdict is contrary to the evidence.*

Appellant argues that since he was under arrest and in custody at the time of the explosion, the attempted crime had been fully terminated and therefore he was not liable for the death under I.C. § 18–603.

Idaho Code § 18–603 provides that a criminal homicide is murder if it is committed recklessly under circumstances manifesting extreme indifference to the value of human life. This recklessness and indifference is presumed if the actor is engaged in the commission of, attempt to commit, or flight after committing or attempting to commit robbery. The state argues that the evidence presented showed beyond a reasonable doubt that the homicide was committed recklessly under circumstances manifesting extreme disregard to human life. As such, the state argues their case was established without the aid of the felony-murder presumption. We agree.

■ The statute requires no showing that the homicide took place during the attempted robbery. The appellant's act of carrying an active bomb into the store, knowing it to be extremely dangerous as shown by his handling, manifests extreme indifference to the value of human life. This act, coupled with the ensuing explosion and death, suffices without the presumption to establish murder under I.C. § 18–603(1)(b).

■ Further, this Court cannot accept the appellant's contention that he should escape liability under the felony-murder rationale. The record shows that the appellant entered the store armed with a home-

---

5. State v. Beason, *supra*; State v. Dillon, *supra*; State v. Martinez, *supra*.

made bomb and a knife with the intent to commit robbery. His handling of the bomb illustrated his full cognizance of its characteristics. The fact he was met by resistance on the part of his intended victim, and in fact placed under arrest, does not release him from the final consequence of his act.

In the case of People v. Welch, 8 Cal.3d 106, 104 Cal.Rptr. 217, 501 P.2d 225 (1972) the California Supreme Court stated:

" * * * homicide is committed in perpetration of the felony if the killing and the felony are parts of one continuous transaction * * *.[6] The person killed need not be the object of the felony." [7] 104 Cal.Rptr. at 225, 501 P.2d at 233.

In Commonwealth v. Banks, 454 Pa. 401, 311 A.2d 576, 578 (1973) the court stated that liability would be imposed where the conduct causing the death was done in furtherance of the design to commit the felony.[8]

■ The explosion causing the death of Officer Flavel clearly falls within the above two definitions. A person is criminally liable for the natural and probable consequences of his unlawful acts as well as unlawful forces set in motion during the commission of an unlawful act. The appellant voluntarily set in motion an instrumentality which carried a very real probability of causing great bodily harm. Death ensued, and the fact appellant was under arrest does not erase criminal liability.

*Asserted error in excluding the testimony of Pat Richardson.*

Pat Richardson, a lifelong acquaintance of the appellant, was called by Hokenson to testify to the content of an overheard conversation of Officer Duane Ailor. The conversation concerned what, in hindsight, Officer Flavel should have done with the bomb. The testimony was offered for the purpose of establishing police policy in similar situations thereby going to the issue of causation.

■ The state objected to the testimony on grounds of immateriality and the objection was sustained by the trial court. The court was correct in its exclusion. An overheard conversation of an officer's discussion in a barber shop does not establish police policy. It merely establishes what another person might have done under similar circumstances. This is immaterial to the case. We further note that the testimony sought was clearly hearsay. No attempt was made to elicit the testimony from Officer Ailor, no offer of proof was made and the appellant presented no further questions on the point.

*Asserted error in trial court instruction No. 15*

The appellant argues that instruction No. 15 relieves the state of its burden of proving beyond a reasonable doubt that the death occurred in the commission of, or an attempt to commit, or flight after committing one of the enumerated crimes in I.C. § 18–603. He urges error in that it placed on the appellant the burden of proving termination of the crime. We disagree. This instruction, read in the light of the other general instructions regarding the burden of proof, was not erroneous.

Judgment affirmed.

SHEPARD, C. J., and McQUADE, McFADDEN and BAKES, JJ., concur.

6. *See also* People v. Whitehorn, 60 Cal.2d 256, 32 Cal.Rptr. 199, 383 P.2d 783, 788 (1963) ; People v. Mason, 54 Cal.2d 164, 4 Cal.Rptr. 841, 351 P.2d 1025, 1028 (1960) ; People v. Chavez, 37 Cal.2d 656, 234 P.2d 632, 640 (1951).

7. People v. Cabaltero, 31 Cal.App.2d 52, 87 P.2d 364 (1939).

8. *See also* Commonwealth v. Yuknavich, 448 Pa. 502, 295 A.2d 290 (1972) ; Commonwealth v. Redline, 391 Pa. 486, 137 A.2d 472 (1958).