SUBSTITUTE OPINION
THE COURT’S PRIOR OPINION DATED JULY 8, 2009, IS HEREBY WITHDRAWN
W. JONES, Justice.
I. NATURE OF CASE
Appellant Juan Carlos Fuentes Pina (Pina) appeals from his conviction of first-degree felony murder following the shooting death of Jesse Naranjo by Johnny Shores. Pina *142 raises three issues on appeal: 1) whether the district court erred in applying the proximate cause rather than the agency theory of felony murder, 2) whether the district court erred in instructing the jury that Pina could be convicted of felony murder if “during the commission or attempted commission of the kidnapping, Jesse Naranjo was killed,” and 3) whether the district court erred in denying Pina’s mid-trial motion to proceed pro se. Because we agree that the district court incorrectly applied Idaho’s felony murder rule and incorrectly instructed the jury, we vacate Pina’s conviction.
II. FACTUAL AND PROCEDURAL BACKGROUND
On November 29, 2005, Jesse Naranjo (Naranjo) was shot by Johnny Shores (Shores) following a dispute between Naranjo and Pina. The argument between Pina and Naranjo first started outside of the house when Naranjo arrived. According to a witness, when Naranjo exited his car, the two men exchanged words before Pina put his hands in his pockets and followed Naranjo into the house, with Naranjo repeatedly looking back at Pina. The witness speculated Pina had a gun in his hand inside the pocket at this time. Once inside, Naranjo and Pina continued to argue and Pina motioned to the floor, making Naranjo get on his knees.
Shores and his girlfriend were asleep in a nearby room when they were awakened by the argument between Pina and Naranjo. When they opened the door to see what was happening they observed Pina standing in front of the kneeling Naranjo, holding a shotgun, and speaking in an angry tone. Shores walked around Naranjo and approached Pina. As the two spoke, Pina motioned at Naranjo and then at Shores’ feet, after which Naranjo bent down and kissed Shores’s foot. According to Shores, he “[njudged [Naranjo] and told him to get up,” and then told Pina to give him the gun. However, another witness testified that after Naranjo kissed Shores’s feet, Shores “kicked [Naranjo] in the face.” According to Shores, Pina responded to Shores’ request for the gun by stating, “No. F— this fool.” Shores continued to encourage Pina to give him the gun and Pina finally relented.
As Pina handed the gun to Shores, Naranjo jumped off his knees and grabbed the gun. The three men wrestled for control and Shores ultimately seized the gun. Pina and Naranjo continued to fight. Naranjo ran to the back of the house and tried to get through the back door, but Pina slammed the door on him. Shores followed behind them and at some point fired the gun.
Shores later stated he was “scared and panicked and didn’t know what to do, and [he] just fired the gun.” He said he did not think he had intended to fire the gun: “I don’t know. I don’t think — it’s just like a reaction. I don’t know. I was just scared. It just happened ... I wasn’t aiming.” He also said it was more of a “warning shot.” Naranjo was shot on the left side of his abdomen and bled to death. Shores pled guilty to voluntary manslaughter for the death of Naranjo.
A grand jury indicted Pina on the charge of “felony murder,” with the indictment alleging he was liable for Naranjo’s death because he:
[D]id wilfully [sic], unlawfully, and deliberately kidnap Jesse Naranjo by seizing and/or confining Jesse Naranjo with intent to cause him without authority of law to be kept and/or detained against his will and that during the course of that kidnapping, Jesse Naranjo, a human being, was unlawfully killed, to-wit: Jesse Naranjo was shot in the abdomen with a shotgun, from which he died, in violation of Idaho Code Section 18-4001,18-4003(d).
Upon completion of the presentation of the State’s case-in-ehief, counsel for Pina moved, pursuant to Idaho Criminal Rule 29, for dismissal. Counsel asserted that the State had failed to present a prima facie case of felony murder because it presented no evidence indicating that the death resulted from any type of common plan or design between Pina and Shores. The State objected but acknowledged, “We don’t assert that Mr. Shores was in on the plan, whatever there was, to kidnap, for whatever purposes, Mr. Naranjo at the time that Mr. Pina brought him into the house.” Instead, the State as *143 serted, “once Mr. Shores was activated, he was clearly not on the side of Jesse Naranjo. He was acting with Mr. Pina against Mr. Naranjo____”
The district court denied the I.C.R. 29 motion, finding that “any killing committed in the perpetration of or attempt to perpetrate a kidnapping is murder of the first degree. Now, the question for the jury is whether this killing did in fact occur during the perpetration or attempt to perpetrate the kidnapping.” The court then adopted a “stream-of-events” theory of felony murder, finding that:
[T]he Idaho Code is very clear in that regard, and if the killing occurs, it does not, our statute does not require a killing to be by the person who initiated the kidnapping and indeed is silent as to that effect. I believe that silence leaves for this court to view this matter, not narrowly under the agency theory, but rather the decision for the jury [is] whether the stream of events is such that this defendant should be held liable for the felony murder of Mr. Naranjo.
Defense counsel renewed the I.C.R. 29 motion during its case-in-chief, and the court again denied it, applying the “stream-of-events concept set forth previously and under the notion of felony murder in this case.”
At the jury instruction conference on June 29, 2006, defense counsel again renewed argument on the issue of insufficient evidence of agency and requested that the jury be instructed that Shores and Pina must have acted in concert with one another for Pina to be found guilty of felony murder. The district court declined to give the requested instructions on agency and instead gave the following instruction:
In order for the defendant to be guilty of Felony Murder in the First Degree, the state must prove each of the following:
1. On or about November 29, 2005,
2. in the State of Idaho,
3. the defendant Juan Carlos FuentesPina, A.K.A. Juan Pina, A.K.A. Juan Carlos Pina, kidnapped, or attempted to kidnap Jesse Naranjo, and
4. during the commission or attempted commission of the kidnapping, Jesse Naranjo was killed.
If any of the above has not been proven beyond a reasonable doubt, you must find the defendant not guilty. If each of the above has been proven beyond a reasonable doubt, then you must find the defendant guilty.
Based on this instruction, the jury returned a verdict of guilty of first degree felony murder. Pina timely filed his appeal from the Judgment of Conviction.
III. ANALYSIS
Pina argues that he was denied due process of law, as guaranteed by the Fourteenth Amendment of the United States Constitution, when he was convicted absent proof beyond a reasonable doubt of every fact necessary to constitute the crime of felony murder. In support of this proposition, he contends that Idaho follows the common-law rule of felony murder, which requires a finding that Pina was acting in concert with Shores or in furtherance of a common object or purpose at the time Shores killed Naranjo. Pina further asserts that the district court erred in giving jury instructions that allowed the jury to convict him of felony murder under a proximate-cause theory.
A. Idaho Applies the Agency Theory of the Felony Mhirder Rule.
Pina argues that he was wrongly convicted because the district court improperly applied the proximate cause rather than the agency[1] theory of felony murder. This issue requires us to interpret the statutory language of Idaho’s felony murder rule, which is rooted in common law.
*144 When interpreting a statute, this Court must strive to give force and effect to the legislatures intent in passing the statute. It must begin with the literal words of the statute; those words must be given them plain, usual, and ordinary meaning; and the statute must be construed as a whole. Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. When engaging in statutory construction, this Court has a duty to ascertain the legislative intent, and give effect to that intent. The Court must construe a statute as a whole, and consider all sections of applicable statutes together to determine the intent of the legislature. The Court also must take account of all other matters such as the reasonableness of the proposed interpretations and the policy behind the statute.
Wheeler v. Idaho Dept. of Health & Welfare, 147 Idaho 257, 263, 207 P.3d 988, 994 (2009) (internal citations and quotations omitted). Once the legislature has chosen to act in an area of the common law and codify a common law rule, adopting only a portion of a common law rule, it is to be presumed that the legislature limited its adoption for a reason. Elec. Wholesale Supply Co. v. Nielson, 136 Idaho 814, 825, 41 P.3d 242, 253 (2001); see also Ultrawall, Inc. v. Washington Mut. Bank, FSB, 135 Idaho 832, 836, 25 P.3d 855, 859 (2001) (“The Court must assume that when the statute was amended, the legislature had full knowledge of the existing judicial decisions and caselaw of the state.”); Hook v. Horner, 95 Idaho 657, 661, 517 P.2d 554, 558 (1973) (“Rules of common law are in effect in Idaho only to the extent that they are not repugnant or inconsistent with legislative enactment.”); State v. Mubita, 145 Idaho 925, 940, 188 P.3d 867, 882 (2008) (“Unless the result is palpably absurd, this Court assumes the legislature meant what is clearly stated in the statute.”).
There has been much controversy and debate among legal scholars over the proper scope and application of the felony-murder rule.[2] In the United States, there are two theories of how the felony-murder rule applies to parties that did not actually kill the victim, including agency and proximate cause. Leonard Birdsong, The Felony Murder Doctrine Revisited: A Proposal for Calibrating Punishment that Reaffirms the Sanctity of Human Life of Co-Felons Who Are Victims, 33 Ohio N.U. L.Rev. 497, 499 (2007). Under the agency theory, the felony-murder rule is only applied to actors who are acting in concert in furtherance of a common plan or scheme to commit the underlying felony and one of them causes the death during the perpetration of the felony, regardless of who actually fired the fatal shot.[3] Under the proximate-cause theory, each actor is held responsible for the death of a person caused during the perpetration of a felony if it was reasonably foreseeable that the acts committed might reasonably be expected to result in death.[4] Under some interpretations of the proximate-cause theory, *145 a person involved in the perpetration of a felony can be held liable for a death even though the death was actually caused by a third person having nothing to do with the perpetration of the felony. See State v. Oimen, 184 Wis.2d 423, 516 N.W.2d 399, 404 (1994) (upholding a conviction under the felony-murder rule when the intended victim of the underlying felony killed a co-felon); People v. Lowery, 178 Ill.2d 462, 227 Ill.Dec. 491, 687 N.E.2d 973, 976 (1997) (applying a broad interpretation of the felony murder rule to uphold a conviction where the intended victim of the armed robbery resisted and accidentally killed an innocent bystander).
The felony-murder rule originally went unchallenged because when it was enacted practically all felonies were punishable by death. People v. Aaron, 409 Mich. 672, 299 N.W.2d 304, 310 (1980). It was, therefore, “of no particular moment whether the condemned was hanged for the initial felony or for the death accidentally resulting from the felony.” Id. at 310-11 (citing Commonwealth v. Redline, 391 Pa. 486, 137 A.2d 472, 476 (1958)). Over the years, common law expanded to include within the felony-murder rule a second element that imputed responsibility for a homicide that occurred during the perpetration or attempt to perpetrate certain felonies to any person participating in the underlying felony. See The History of the Pleas of the Crown, 1 Hale 443 (1736) (noting that as to the culpability of one person for another’s felonious acts, “the books in all the instances of this nature say, that it is murder or manslaughter in that party, that abetted him ... and consented to the act.” (emphasis added)); R. v. Bosworth, 99 Eng. Rep. 138-39 (1779) (holding that the felony murder rule is only properly applied where, at the instant the crime was committed, the charged perpetrators “were all of the same party, and upon the same pursuit, and under the same engagement and expectation of mutual defense and support with those that did the [crime]”); A Treatise of the Pleas of the Crown, 1 East 255, 259 (1803) (“In order to make the killing, by any, murder in all of those who are confederated together for an unlawful purpose, merely on account of the unlawful act done or in contemplation, it must happen during the actual strife or endeavor, or at least within such a reasonable time afterwards as may leave it probable that no fresh provocation intervened.” (emphasis added)).[5]
It was within this historical context that in 1864 the territorial legislature first codified what is now considered the Idaho felony-murder rule.[6] The statute stated in relevant part: “All murder which shall ... be committed in the perpetration, or attempt to perpetrate, any arson, rape, robbery, or burglary, shall be deemed murder of the first degree; and all other kinds of murder shall be deemed murder of the second degree----” Crime & Pun. § 17 (Idaho 1864). Since 1864, the legislature has amended the statute ten times, but the substance has remained relatively unchanged.[7] The current *146 version was adopted in 2002 and it states: “Any murder committed in the perpetration of, or attempt to perpetrate, aggravated battery on a child under twelve (12) years of age, arson, rape, robbery, burglary, kidnapping or mayhem, or an act of terrorism, as defined in section 18-8102, Idaho Code, or the use of a weapon of mass destruction, biological weapon or chemical weapon, is murder of the first degree.” I.C. § 18-4003(d).
It is clear and unambiguous that the sole purpose of the felony murder rule as adopted by the Idaho legislature was to raise a killing from second-degree murder to first degree solely due to the death occurring during perpetration of the enumerated felonies. See I.C. § 18-4003(d). There is not currently, nor has there ever been, any mention in I.C. § 18-4003(d) of imputation of responsibility for a killing from the actual murderer to any person who was not a co-conspirator in the underlying felony. When the legislature codified the felony murder rule, it used it only to elevate the degree of murder for which the actual killer was responsible. It is important to note, however, that even though § 18-4003(d) is silent as to whether third persons can be guilty of felony murder, English common law had expanded the felony-murder rule to apply to only those acting jointly and in concert with the actual killer for the common purpose of the underlying felony. In 1864, the legislature also adopted what is now codified as I.C. § 73-116 which states:
Common law in force. — The common law of England, so far as it is not repugnant to, or inconsistent with, the Constitution or laws of the Untied States, in all cases not provided for in these compiled laws, is the rule of decision in all courts of this state.
Consequently, Idaho’s felony-murder statute must be viewed through the lens of the English common law at the time of its adoption, which was that the felony-murder rule applied only to co-conspirators acting in concert in furtherance of the common plan or scheme to commit the underlying felony. Since I.C. § 18^4003(d) is silent as to what theory should be applied to co-felons participating in the underlying felony, this Court, pursuant to I.C. § 73-116, should look to the existing common law at the time of adoption of the felony-murder rule to determine its application to co-felons.
Our careful review of the felony murder rule as it has been applied in Idaho shows that there has never been a felony murder case before this Court or the Court of Appeals that resulted in a person involved in the commission of a felony being held responsible for a killing caused by a third person not involved in the underlying felony. Nonetheless, the district court interpreted the felony murder rule in Pina’s case as follows:
[I.C. § 18-4003(d) ] does not require a killing to be by the person who initiated the kidnapping and indeed is silent as to that effect. I believe that silence leaves for this court to view this matter, not narrowly under the agency theory, but rather the decision for the jury [is] whether the stream of events is such that this defendant should be held liable for the felony murder of Mr. Naranjo.
(Emphasis added). In so stating, the district court attempted impermissibly to broaden the felony murder rule beyond its common-law application by relying on the “stream of events” concept that has been mentioned in prior felony-murder cases. For example, in State v. Hokenson, 96 Idaho 283, 284, 527 P.2d 487, 488 (1974), this Court used the “stream of events” language when “Hokenson, armed with a homemade bomb and a knife, entered Dean’s Drug Center, Lewiston, on the evening of January 13, 1972 with the intent to commit robbery. The resulting course of events ended with the death of Officer Ross D. Flavel.” (Emphasis added). This Court applied Idaho’s felony-murder *147 rule to charge as first-degree murder a killing that occurred during an attempted robbery. The rule was applied in that case only for the purpose of raising the seriousness of the crime from murder in the second degree, manslaughter, or some lesser form of homicide, to murder in the first degree. Thus, in Hokenson this Court applied the felony-murder rule in its most basic original form at common law. Hokenson did not involve application of the felony-murder rule to co-conspirators or co-felons.
In State v. Fetterly, 109 Idaho 766, 710 P.2d 1202 (1985), this Court applied the felony murder rule to a death that occurred during the perpetration of a burglary. This Court, using the language from Hokenson, stated that the victim’s “death was part of a stream of events which began the evening Fetterly and Windsor entered [the victim’s] home and ended the following day when [the victim’s] possessions were removed from the home.” Id. at 771-72, 710 P.2d at 1207-08 (emphasis added). Fetterly and his girlfriend, Karla Windsor, were charged with murder in the first degree because the killing occurred during the commission of a burglary by Fetterly and Windsor acting in concert. Although the Court used the phrase “stream of events,” it did not adopt the proximate-cause theory of felony murder. Rather, this Court recognized that there were two accomplices who were both involved in the common plan or scheme to burglarize the residence. The felony murder rule on an agency theory was properly applied in that case because both accomplices were involved in carrying out the underlying felony. Even though the “stream of events” language has been used to impute responsibility for a killing from the actual killer to a co-conspirator in the underlying felony, no Idaho case has ever used the felony-murder rule to impute responsibility from the actual killer not involved in perpetration of the underlying felony to an individual perpetrating such felony. It was error for the district court to do so in Pina’s case.
Additionally, this Court indicated in State v. Scroggins, 110 Idaho 380, 716 P.2d 1152 (1985), that Idaho’s felony murder rule requires a finding that each participant had the specific intent to commit the underlying felony: “In a prosecution for felony murder, the state is relieved of the burden of proving that a defendant had the specific intent to kill and instead need only prove that all individuals charged as principals had the specific intent to commit the predicate felony.” Id. at 386, 716 P.2d at 1158 (emphasis added); see also State v. Owen, 73 Idaho 394, 418-19, 253 P.2d 203, 218 (1953) (finding that a co-felon was guilty of a felony murder committed during an armed robbery by virtue of the fact that he was aiding in the robbery and could therefore have been charged as a principal).
Up to this point, neither the legislature nor the judiciary has ever applied the proximate cause theory of the felony-murder rule in Idaho. As we stated above, when the legislature codified the common law felony-murder rule, it was silent as to its application to co-felons. Absent any statute on the issue we look to the common law, which clearly applies the agency theory to felony murder. Thus, we hold that Idaho has consistently applied the agency theory of the felony-murder rule. Any change of that rule lies in the province of the legislature. There was no basis in law to support the district court’s decision to apply the proximate-cause theory of the felony murder rule in Pina’s case.
B. The Jury Instructions Given by the District Court Constitute Reversible Error.
Pina next argues that the district court erred when it gave jury instructions that allowed the jury to convict Pina under what amounts to a proximate-cause theory or what actually seems to be a strict-liability theory. “The propriety of jury instructions is a question of law over which this Court exercises free review.” State v. Young, 138 Idaho 370, 372, 64 P.3d 296, 298 (2002). “When reviewing jury instructions, this Court must first ask whether the instructions as a whole, and not individually, fairly and accurately reflect the applicable law. To be reversible error, instructions must have misled the jury or prejudiced the complaining party.” Id. (citations omitted).
As noted above, the jury instructions given by the district court read as follows:
*148 In order for the defendant to be guilty of Felony Murder in the First Degree, the state must prove each of the following:
1. On or about November 29, 2005,
2. in the State of Idaho,
3. the defendant Juan Carlos FuentesPina, A.K.A. Juan Pina, A.K.A. Juan Carlos Pina, kidnapped, or attempted to kidnap Jesse Naranjo, and
4. during the commission or attempted commission of the kidnapping, Jesse Naranjo was killed.
If any of the above has not been proven beyond a reasonable doubt, you must find the defendant not guilty. If each of the above has been proven beyond a reasonable doubt, then you must find the defendant guilty.
Pina argues that the court erred in giving this overly broad jury instruction because it permitted the jury to find Pina liable for any killing that occurred contemporaneously with the kidnapping. For example, had Naranjo suffered a fatal heart attack during the commission or attempted commission of the kidnapping, or been struck by lightning, the jury instructions given by the district court would have allowed the jury to find Pina guilty of first degree felony murder. We hold that the district court erred in giving this instruction to the jury because the instruction fails to accurately reflect the applicable law and prejudiced Pina.
The district court’s jury instruction allowed the jury to convict Pina of felony murder without regard to whether Pina and Shores were engaged in a common scheme or plan to kidnap Naranjo that resulted in Naranjo’s death. It is significant that the State admitted during trial: “We don’t assert that Mr. Shores was in on the plan, whatever there was, to kidnap, for whatever purposes, Mr. Naranjo at the time that Mr. Pina brought him into the house.” Accordingly, we hold that the district court committed reversible error when it so instructed the jury.
C. We Do Not Reach the Issue of Pina’s Motion to Proceed Pro Se.
Pina also argues that the district court erred in denying his mid-trial motion to proceed pro se because the court did not conduct a proper inquiry under Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Because we vacate Pina’s conviction on other grounds, we do not reach this issue.
IV. CONCLUSION
We reaffirm the agency theory, rather than the proximate-cause theory, of felony murder applies in Idaho. Thus, we hold that Pina was wrongly convicted of first-degree felony murder because the district court incorrectly instructed the jury on the felony-murder rule in Idaho. Accordingly, Pina’s conviction is vacated, and this case is remanded to the district court for a new trial.
Chief Justice EISMANN and Justice J. JONES, concur.

. Although historically courts have defined the "agency” theory of the felony-murder rule as encompassing only co-felons involved in a common scheme or plan in furtherance of the underlying felony, it is probably more appropriately identified as the "co-conspirator” or "co-felon” theory of felony murder since there may be questions as to whether the co-conspirators are actually "agents” of each other under applicable law of agency. Nevertheless, this Opinion will employ the historically used term "agency theory" of felony murder.

. In the United States today, at least three states have abolished felony murder, including Hawaii, Kentucky and Michigan. Martin Lijtmaer, The Felony Murder Rule in Illinois: The Injustice of the Proximate Cause Theory Explored Via Research in Cognitive Psychology, 98 J.Crim L. & Criminology 621, 626 (2008).

. A majority of states have adopted the agency theory of the felony-murder rule. See, e.g., Weick v. State, 420 A.2d 159, 161-62 (Del.1980); State v. Garner, 238 La. 563, 115 So.2d 855, 861-64 (1959); Campbell v. State, 293 Md. 438, 444 A.2d 1034, 1037 (1982); Commonwealth v. Balliro, 349 Mass. 505, 209 N.E.2d 308, 313 (1965); State v. Rust, 197 Neb. 528, 250 N.W.2d 867, 875 (1977); Clark County Sheriff v. Hicks, 89 Nev. 78, 506 P.2d 766, 768 (1973); State v. Harrison, 90 N.M. 439, 564 P.2d 1321, 1323-24 (1977); State v. Oxendine, 187 N.C. 658, 122 S.E. 568, 570 (1924); State v. Jones, 859 P.2d 514, 515 (Okla. Crim.App.1993); Commonwealth v. Redline, 391 Pa. 486, 137 A.2d 472, 482-83 (1958); State v. Severs, 759 S.W.2d 935, 938 (Tenn.Crim.App.1988); Wooden v. Commonwealth, 222 Va. 758, 284 S.E.2d 811, 816(1981).

.A minority of states have adopted the proximate-cause theory of the felony murder rule. See, e.g., State v. Lopez, 173 Ariz. 552, 845 P.2d 478, 482 (Ariz.Ct.App.1992); Mikenas v. State, 367 So.2d 606, 608 (Fla.1978); People v. Dekens, 182 Ill.2d 247, 230 Ill.Dec. 984, 695 N.E.2d 474, 475 (1998); Sheckles v. State, 684 N.E.2d 201, 205 (Ind.Ct.App.1997); Stale v. Baker, 607 S.W.2d 153, 156 (Mo.1980); People v. Hernandez, 82 N.Y.2d 309, 604 N.Y.S.2d 524, 624 N.E.2d 661, 665 (1993).

. The felony murder doctrine was "continuously modified and restricted in England, the country of its birth, until its ultimate rejection by Parliament in 1957." Aaron, 299 N.W.2d at 310-11.

. There is no statute in Idaho that is titled "felony murder” or any variation thereof. Rather, what has come to be known as the "felony-murder rule” in Idaho is codified in the Homicide chapter of the Idaho Code in a section titled "Degrees of murder.” I.C. § 18 — 4003(d).

. Compare Crime & Pun. § 17 (Idaho 1864) with I.C.A. § 6562 (1908) ("All murder ... which is committed in the perpetration of, or attempt to perpetrate, arson, rape, robbery, burglary, or mayhem, is murder of the first degree. All other kinds of murder are of the second degree."), I.C.A. § 8211 (1919) (same), I.C.A. § 17-1103 (1932) (same), 1935 Idaho Sess. Laws 41 ("All murder ... which is committed in the perpetration of, or attempt to perpetrate arson, rape, robbeiy, burglary, kidnapping or mayhem, is murder of the first degree. All other kinds of murder are of the second degree.” (emphasis in original)), 1969 Idaho Sess. Laws 773 (adding provision defining any murder of any peace officer acting in the line of duty as first degree murder); 1971 Idaho Sess. Laws 630-76 (1971) (completely revising the criminal code by adopting most of the Model Penal Code), 1972 Idaho Sess. Laws 844-28 (repealing the 1971 criminal code revisions and reenacting the prior code, including the felony murder rule: "All murder ... which is committed in the perpetration of, or attempt to perpetrate arson, rape, robbery, burglary, kidnapping or mayhem, is murder of the first degree.”), 1977 Idaho Sess. Laws 391 ("Any murder committed in the perpetration of, or attempt to perpetrate, arson, rape, robbery, burglary, kidnapping or mayhem, is murder of the first degree.”), 1991 Idaho Sess. Laws 547 ("Any *146 murder committed in the perpetration of, or attempt to perpetrate, aggravated battery on a child under twelve (12) years of age, arson, rape, robbery, burglary, kidnapping or mayhem, is murder of the first degree.”), and 2002 Idaho Sess. Laws 627 ("Any murder committed in the perpetration of, or attempt to perpetrate, aggravated battery on a child under twelve (12) years of age, arson, rape, robbery, burglary, kidnapping or mayhem, or an act of terrorism, as defined in section 18-8102, Idaho Code, or the use of a weapon of mass destruction, biological weapon or chemical weapon, is murder of the first degree.”).