BURDICK, Justice,
dissenting.
After the oral argument on petition for rehearing, I still respectfully dissent and, for the following reasons, would affirm Pina’s conviction.
I. Felony murder pursuant to I.C. § 18-4003(d).
Pina first contends that the State failed to present any evidence to support a finding that he was acting in concert with Shores when Shores killed Naranjo. Therefore, he was convicted absent proof beyond a reasonable doubt of every fact necessary to constitute the crime of felony murder. I find that the State presented sufficient evidence for Pina’s conviction of first degree felony murder pursuant to I.C. § 18-4003(d).
“The Due Process Clause of the United States Constitution precludes conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which a defendant is charged.” State v. Romero-Garcia, 139 Idaho 199, 204, 75 P.3d 1209, 1214 (Ct.App.2003). Pina was charged and convicted under I.C. § 18 — 4003(d), which states:
Any murder committed in the perpetration of, or attempt to perpetrate, aggravated battery on a child under twelve (12) years *149 of age, arson, rape, robbery, burglary, kidnapping or mayhem, or an act of terrorism, as defined in section 18-8102, Idaho Code, or the use of a weapon of mass destruction, biological weapon or chemical weapon, is murder of the first degree.
Pina’s felony murder charge was based on the underlying felony of kidnapping. Upon completion of the presentation of the State’s case-in-chief, Pina moved, pursuant to Idaho Criminal Rule 29, for dismissal, asserting that the State had failed to present a prima facie case of felony murder. The district court denied the I.C.R. 29 motion, finding that “any killing committed in the perpetration of or attempt to perpetrate a kidnapping is murder of the first degree. Now, the question for the jury is whether this killing did in fact occur during the perpetration or attempt to perpetrate the kidnapping.” Therefore, the court determined the state had presented evidence sufficient to sustain a conviction of felony murder. See I.C.R. 29(a).
I agree, and find that a defendant may be criminally liable for the death of any person killed during the perpetration of a felony provided for in I.C. § 18-4003(d) when that murder is the natural and probable consequence of the defendant’s unlawful acts. The defense argues that Idaho does not follow a proximate cause approach, relying on its contention that I.C. § 18-4003(d) is a codification of the common law in existence at the time of its adoption. I do not find this argument to be persuasive proof that Idaho has adopted an agency theory of felony murder. The Court’s previous treatment of felony murder in general provides guidance on the evolution of our felony murder law. First, in examining and defining the plain language of I.C. § 18-4003(d), this Court has stated that “[t]he word ‘perpetration’ is synonymous with the word ‘commission,’ which means ‘the act of committing, performing, or doing (as a crime, misdeed, or other offense).’” State v. McLeskey, 138 Idaho 691, 698, 69 P.3d 111, 118 (2003) (quoting Webster’s Third New International Dictionary 1684 (Philip Babcock Gove ed., G. & C. Merriam Co. 1971)). Thus, the plain language of I.C. § 18-4003(d) indicates that any murder committed in the commission of kidnapping is murder of the first degree.
The language in I.C. § 18-4003(d) has remained largely unchanged since Idaho’s territorial days. State v. Lankford, 116 Idaho 860, 879, 781 P.2d 197, 216 (1989). The first Idaho ease to address the policy behind the felony murder rule stated: “It is the policy of the law to hold persons engaged in felonies, or attempts to commit felonies, responsible for all the consequences of their felonious acts, whether such consequences were intended or not----” People v. Mooney, 2 Idaho 24, 2 P. 876 (1882).
This policy of holding a person committing a felony criminally liable for “all the consequences” of his felonious acts was reiterated, and somewhat restricted, by this Court in State v. Hokenson, 96 Idaho 283, 527 P.2d 487 (1974). In Hokenson we stated: “A person is criminally liable for the natural and probable consequences of his unlawful acts as well as the unlawful forces set in motion during the commission of an unlawful act.” 96 Idaho at 288, 527 P.2d at 492. This was the first introduction of Idaho’s “stream of events” approach to felony murder under I.C. § 18-4003(d). In Hokenson, the defendant entered a store with a bomb and a knife with the intent to commit robbery, but he was met with resistance and eventually placed under arrest. Id. at 287-88, 527 P.2d at 491-92. One of the responding officers was then killed when handling the bomb the defendant had brought into the store. The Court found that the defendant had “voluntarily set in motion an instrumentality which carried a very real probability of causing great bodily harm,” and even the intervening force of the defendant’s arrest did not allow him to escape liability for felony murder. Id. at 288, 527 P.2d at 492.
The “stream of events” language was then used in State v. Fetterly, 109 Idaho 766, 710 P.2d 1202 (1985) and State v. Pratt, 125 Idaho 546, 873 P.2d 800 (1993). Both cases were concerned with the temporal issue of a felony that occurred prior to the actual murder, and both involved defendants that were either co-felons or the principal actor. In Fetterly, this Court found that the victim’s death was “part of a stream of events which *150 began the evening [the defendant] entered [the victim]’s home and ended the following day when [the victimjs possessions were removed from the home.” 109 Idaho at 771-72, 710 P.2d at 1207-08. Similarly, in Pratt, the Court stated that the victim’s death had been “part of the stream of events” that began when the defendant and his brother entered a residence for the purpose of stealing money, continued through a chase, and ended the following day when they finally surrendered to the police after killing one of the officers. 125 Idaho at 558, 873 P.2d at 812.
Furthermore, the Idaho Court of Appeals has used language that allows for the liability of anyone involved in the initial felony if that felony itself leads to death:
Any murder committed during the perpetration of certain felonies ... is murder in the first degree under § 18-4003(d). Any participant in the predicate felony can be held accountable for first degree murder for any death that occurred during the commission of the felony, regardless of whether that individual directly participated in the killing or expected or intended a death to occur.[1]
State v. Eby, 136 Idaho 534, 539, 37 P.3d 625, 630 (Ct.App.2001). In Eby, the defendant, along with two others, robbed and murdered the victim, and the defendant was convicted of first degree felony murder. The language from Eby follows the stream of events approach in that so long as an individual has the intent to participate in the predicate felony, he can be criminally liable for any death occurring during the commission of that felony. This Court also stated in State v. Windsor, 110 Idaho 410, 716 P.2d 1182 (1985) that, under I.C. § 18-4003(d), “a defendant who participates in a felony can be held liable for the death of any person killed during the commission of the felony, regardless of the individual defendant’s intent that a death occur.” 110 Idaho at 419, 716 P.2d at 1191.
It is well established that the intent requirement for first degree murder is satisfied by the commission of the underlying felony:
[P]roof of a murder in the first degree is established in all of its elements by proving (a) the unlawful killing of a human being (b) in the course of a robbery. The requirement of “malice aforethought” is satisfied by the fact the killing was committed in the perpetration of a robbery.
State v. Lankford, 116 Idaho 860, 866, 781 P.2d 197, 203 (1989). The defendant need only have the specific intent to commit the predicate felony, not the homicide. In State v. Cheatham, 134 Idaho 565, 6 P.3d 815 (2000), this Court addressed a situation where the actors may not have formed the intent to commit the felony prior to the homicide. The Court stated:
If the State cannot prove Cheatham and Duyungan intended to rob [the victim] by taking his property against his will prior to the commission of the homicide, then the homicide and the taking of [the victimjs property would not be part of the same general criminal occurrence and Cheatham and Duyungan could not be convicted of felony murder.
Id. at 571, 6 P.3d at 821. Where the intent to commit the felony was present at the time of the homicide, the homicide is considered part of the same general criminal occurrence. In addition, similar language was used in a 1985 Idaho Supreme Court case: “In a prosecution for felony-murder, the state is relieved of the burden of proving that a defendant had the specific intent to kill and instead need only prove that all individuals charged as principals had the specific intent to commit the predicate felony.” State v. Scroggins, 110 Idaho 380, 386, 716 P.2d 1152, 1158 (1985).
Therefore, where the defendant had the specific intent to commit the underlying felony, he is criminally liable for the death of any person killed in the perpetration of the felony when that murder is the natural and probable consequence of his unlawful acts. It should be noted that some past Idaho case law has simply stated that a person is criminally liable for any death that occurs during the commission of the felony, with no limita *151 tion provided, and I find this liability too expansive. See State v. Windsor, 110 Idaho 410, 716 P.2d 1182 (1986); State v. Eby, 136 Idaho 534, 539, 37 P.3d 625, 630 (Ct.App.2001). However, our other case law provides a proximate cause limitation to this rule. See State v. Hokenson, 96 Idaho 283, 527 P.2d 487 (1974); State v. Fetterly, 109 Idaho 766, 710 P.2d 1202 (1985); State v. Pratt, 125 Idaho 546, 873 P.2d 800 (1993). To allow an individual to be criminally liable for any death occurring in the commission of a felony would be an expansion of our felony murder law.
The Illinois Supreme Court decided a case very similar to the one currently before us in People v. Loivery, 178 I11.2d 462, 227 IlLDec. 491, 687 N.E.2d 973 (1997). The facts of Lowery were as follows:
In his statement to the police officers, defendant explained that he and his companion, “Capone,” planned to rob Maurice, Marlon, and Robert. As Maurice, Marlon, and Robert walked along Leland Avenue in Chicago, defendant approached them, pulled out a gun and forced Maurice into an alley. Capone remained on the sidewalk with Robert and Marlon. Once in the alley, defendant demanded Maurice’s money. Maurice grabbed defendant’s gun and a struggle ensued. Meanwhile, Capone fled with Robert in pursuit. Marlon ran into the alley and began hitting defendant with his fists. As defendant struggled with Maurice and Marlon, the gun discharged. The three continued to struggle onto Leland Avenue. Upon pushing Maurice down, defendant noticed that Maurice now had the gun. Defendant then ran from the place of the struggle to the corner of Leland and Magnolia Avenues, where he saw two women walking. As he ran, he heard gunshots and one of the women scream.
Id., 227 Ill.Dec. 491, 687 N.E.2d at 975. The court first stated that it would adhere to the proximate cause theory of felony-murder: “A felon is liable for those deaths which occur during a felony and which are the foreseeable consequence of his initial criminal acts.” Id., 227 Ill.Dec. 491, 687 N.E.2d at 977-78. The court found that the defendant’s attempted robbery set in motion the events that lead to the victim’s death and it was “unimportant that defendant did not anticipate the precise sequence of events that followed his robbery attempt” because his “unlawful acts precipitated those events, and he [was] responsible for the consequences.” Id., 227 Ill.Dec. 491, 687 N.E.2d at 978.
Here, the jury could reasonably find that Pina had the specific intent to commit the predicate felony of kidnapping. A witness observed Naranjo exiting his car with Pina following him into the house, and the witness testified that Pina acted consistently with having a gun in his hand inside his pocket. Pina was then seen to motion Naranjo to the floor after they got inside the house while they argued. Pina had a gun in his hands and when Shores asked him to hand over the gun, Pina replied “No. F— this fool.” After the struggle for the gun, Pina tried to stop Naranjo from exiting the house. Based upon the testimony the jurors heard, they could reasonably have concluded that Pina was detaining Naranjo against his will, and had the intent to kidnap or even kill Naranjo.
Then, similarly to the facts in Hokenson and Lowery, Naranjo’s death occurred as part of the stream of events “set in motion during the commission” of the kidnapping by Pina. Shores’s intent at this time was irrelevant. When Pina held Naranjo at gunpoint he “set in motion an instrumentality which carried a very real probability of causing great bodily harm,” similar to the bomb in Hokenson. Even with the intervening force of Shores gaining control of the gun, Pina continued to attempt to detain Naranjo against his will, preventing him from leaving through the backdoor. Thus, it does not matter whether Pina “directly participated in the killing or expected or intended a death to occur” because the murder occurred during the commission of the predicate felony and was the natural and probable consequence of this kidnapping. Therefore, I would affirm Pina’s conviction.
II. The jury instruction was proper.
Pina next argues that the district court erred when it gave jury instructions that allowed the jurors to convict under a strict *152 liability theory because the instructions misled the jury and prejudiced Pina by affirmatively misstating the law. “The propriety of jury instructions is a question of law over which this Court exercises free review.” State v. Young, 138 Idaho 370, 372, 64 P.3d 296, 298 (2002). “When reviewing jury instructions, this Court must first ask whether the instructions as a whole, and not individually, fairly and accurately reflect the applicable law. To be reversible error, instructions must have misled the jury or prejudiced the complaining party.” Id. (citations omitted).
The jury instruction Pina contends allowed the jurors to convict him under a theory of strict liability read as follows:
In order for the defendant to be guilty of Felony Murder in the First Degree, the state must prove each of the following:
1. On or about November 29, 2005,
2. in the State of Idaho,
3. the defendant Juan Carlos FuentesPina, A.K.A. Juan Pina, A.K.A. Juan Carlos Pina, kidnapped, or attempted to kidnap Jesse Naranjo, and
4. during the commission or attempted commission of the kidnapping, Jesse Naranjo was killed.
If any of the above has not been proved beyond a reasonable doubt, you must find the defendant not guilty. If each of the above has been proven beyond a reasonable doubt, then you must find the defendant guilty.
Pina argues that the court erred in giving this instruction because it not only allowed the jury to convict him regardless of whether the killing was attributable to him through an agency theory of liability, but it also allowed the jury to find him liable for any killing that occurred contemporaneously with the alleged kidnapping, even in the absence of any relation between the two acts.
Pina’s argument fails on both grounds. First, as discussed above, the court was not required to instruct the jury that it had to find Pina was acting in concert with Shores or in furtherance of a common object or purpose, because this is not the law in Idaho. Furthermore, the instruction did not allow Pina to be convicted for any killing that occurred contemporaneously with the kidnapping. Instead, the instruction specified that it was the killing of Jesse Naranjo during the kidnapping that the jury was to consider. The jury had knowledge that Shores had pled guilty to voluntary manslaughter for the death of Naranjo and that the “killing” referred to was the murder of Naranjo by Shores. This instruction properly reflected the law and, therefore, did not mislead the jury or prejudice Pina.
III. Pina’s midtrial request to proceed pro se was properly denied.
As I would affirm the conviction, I will address Pina’s contention that his request to proceed pro se was wrongfully denied. Pina’s final argument is that the district court erred in denying his midtrial motion to proceed pro se without conducting a proper Faretta inquiry. The United States Supreme Court held in Faretta v. California, 422 U.S. 806, 819-20, 95 S.Ct. 2525, 2533-34, 45 L.Ed.2d 562, 572-73 (1975) that the Sixth Amendment guarantees criminal defendants the right to proceed pro se. In Faretta, the Supreme Court found that the right to self-representation is implied by the structure of the Sixth Amendment: “The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails.” 422 U.S. at 819-20, 95 S.Ct. at 2533, 45 L.Ed.2d at 572-73. However, the Supreme Court recognized that “the right of an accused to conduct his own defense seems to cut against the grain of this Court’s decisions holding that the Constitution requires that no accused can be convicted and imprisoned unless he has been accorded the right to the assistance of counsel.” Id. at 832, 95 S.Ct. at 2540, 45 L.Ed.2d at 580. Therefore, the Supreme Court held that that an accused must “knowingly and intelligently” relinquish the benefits associated with the right to counsel. Id. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 581. Thus, while a defendant “need not have a valid reason for seeking to act as his own attorney any more than he or she needs a valid reason to exercise any other constitutional right,” State v. Hoppe, *153 139 Idaho 871, 875, 88 P.3d 690, 694 (2003)[2], a Faretta inquiry generally must be conducted to ensure that the defendant is aware of the dangers and disadvantages of self-representation. See Faretta, 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 581-82; State v. Lankford, 116 Idaho 860, 865, 781 P.2d 197, 202 (1989).
However, the Faretta right to self-representation is not absolute. Martinez v. Court of Appeal, 528 U.S. 152, 161, 120 S.Ct. 684, 690-91, 145 L.Ed.2d 597, 607 (2000). To preserve the right to self-representation, “a defendant must make a timely and unequivocal request for self-representation which is not a tactic to secure delay.” U.S. v. Smith, 780 F.2d 810, 811 (9th Cir.1986). In Faretta, the facts of the case stated that the defendant had “clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel.” 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 582 (emphasis added). The request had also been made weeks before the trial. Id. When a defendant’s motion to proceed pro se is not timely and unequivocal, the granting or denial of the motion is left to the discretion of the trial court. State v. Stenson, 132 Wash.2d 668, 940 P.2d 1239, 1274 (1997).
First, a defendant’s request for self-representation is timely if made before meaningful trial proceedings have begun. Smith, 780 F.2d at 811; see also People v. Burton, 48 Cal.3d 843, 258 Cal.Rptr. 184, 771 P.2d 1270, 1275 (1989) (“It is within the court’s discretion to deny a motion made before the jury is impaneled if the court finds the motion is made for the purpose of delay.”). In State v. Reber, 138 Idaho 275, 61 P.3d 632 (Ct.App.2002), the court of appeals stated:
A motion for self-representation is timely if made prior to the commencement of meaningful trial proceedings. Empanelment of a jury is a meaningful trial proceeding; thus, a motion for self-representation after jury empanelment is untimely. Where the request for self-representation is untimely, it nevertheless may be granted in the trial court’s discretion. We, therefore, review the trial court’s denial of an untimely motion for self-representation under an abuse of discretion standard.
Id. at 277-78, 61 P.3d at 634-35 (citations omitted). In Reber, the court of appeals found that the district court did not abuse its discretion in denying the defendant’s motion for self-representation made after jury empanelment, even though the court had not expressed its rationale for the denial. Id. at 278, 61 P.3d at 635. In contrast to the defendant in Reber, the defendant in Faretta had made his request for self-representation weeks before the trial had begun. 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562, 582 (1975). The requirement that the defendant make a timely request “serves to prevent a defendant from misusing the motion to delay unjustifiably the trial or to obstruct the orderly administration of justice.” People v. Horton, 11 Cal.4th 1068, 47 Cal.Rptr.2d 516, 906 P.2d 478, 504 (1995). Thus, the trial court is granted discretion in denying motions to proceed pro se that were not timely made.
Second, the request to proceed pro se must be unequivocal “[t]o protect defendants from making capricious waivers of counsel and to protect trial courts from manipulative vacillations by defendants regarding representation.” State v. Stenson, 132 Wash.2d 668, 940 P.2d 1239, 1275 (1997). The Supreme Court in Faretta acknowledged this concern: “The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law.” 422 U.S. at 834 n. 46, 95 S.Ct. at 2541 n. 46, 45 L.Ed.2d at 581 n. 46. In Stenson, the defendant made a motion to represent himself when the trial court denied his motion for new counsel. 940 P.2d at 1275. The Washington Supreme Court found the defendant’s request to be equivocal based on the record as a whole, including the following exchange:
THE COURT: As to a motion to represent yourself at this point in the trial, as I have indicated, certainly you have a constitutional right to do that if a motion is timely made. At this point in time I find *154 that that motion is not timely made and I also find based wpon your indications that you really do not want to proceed without counsel.
DEFENDANT: But likewise I do not proceed [sic] with counsel that I have.
THE COURT: I understand that. Based upon those considerations, I’m going to deny the motion to allow you to proceed pro se.
Id. (emphasis in original). Requiring that a defendant make an unequivocal request to proceed pro se allows the trial court “to distinguish between a manipulative effort to present particular arguments and a sincere desire to dispense with the benefits of counsel.” United States v. Bush, 404 F.3d 263, 271 (4th Cir.2005). The right to self-representation cannot be used as a subterfuge to delay or “for disruption, for distortion of the system, or for the manipulation of the trial process.” Edwards v. Commonwealth, 49 Va.App. 727, 644 S.E.2d 396, 400 (2007) (citing United States v. Frazier-El, 204 F.3d 553, 558 (4th Cir.2000)). Therefore, to protect the dignity of the courtroom, a defendant’s request to proceed pro se must be unequivocal.
Here, Pina’s request to proceed pro se was not timely nor unequivocal. Similarly to Reber, meaningful trial proceedings had commenced before Pina made his request and it was therefore not timely. Not only had meaningful trial proceedings commenced, they were nearing a close. Following Pina’s decision to not return to court, both defense counsel and the State rested and the court recessed before closing arguments were to begin. While the district court did not express its rationale for the denial of Pina’s motion other than to recognize it as untimely, the stage of the proceedings was undeniably meaningful and the district court acted within its discretion in denying Pina’s untimely motion to proceed pro se.
In addition, Pina’s motion for self-representation was equivocal and a clear example of the need “[t]o protect defendants from making capricious waivers of counsel and to protect trial courts from manipulative vacillations by defendants regarding representatiori.” Similarly to Stenson, Pina’s request was not equivocal enough to allow the court to determine if it was a sincere request or an effort to delay or disrupt the proceedings. Based upon the deputy’s account of Pina’s refusal to come back to the courtroom, Pina had become very angry with his counsel, stating “F— you. I’m not coming to court. Just give me my 3X jumpsuit, it’s a mistrial, I want a new attorney.” The court then requested that defense counsel inform Pina that the court was ordering him to appear and indicated that it viewed Pina’s behavior as an effort to disrupt the proceedings when it stated “if a defendant purposefully refuses to come to the proceedings, we will not allow him to dictate what goes on with the case.” After the court had determined to proceed without Pina, the deputy returned and stated that Pina had agreed to come to the courtroom but only “if he can grab his papers and represent himself at this point.”
The court determined that Pina would not be allowed to represent himself because the request was untimely. The deputy informed Pina of the court’s decision and reported:
I was informed ... to inform him, that he would not be allowed to represent himself — represent himself. He was about halfway up the hall. He said, and I quote, “F— you then. I ain’t going.” And I put — I asked him if he’d just step in holding five for a minute so I could inform you, and he said, “Fine,” and he sits in there and refuses to go any further.
However, Pina then returned to the courtroom before closing arguments commenced. Defense counsel informed the court that Pina intended to be present during the remainder of the trial. Pina then informed the court that he had been concerned that another case pending against him was going to be brought up and would be prejudicial. The court assured him that the only charge the jury would be considering was the felony murder charge and the lesser included offense of false imprisonment. Thus, Pina indicated that he had refused to come to the courtroom because he believed he was being charged with another crime.
Examining the record as a whole, I find that Pina’s request for self-representation was not made as a result of a sincere desire *155 to dispense with the benefits of the right to counsel and instead was an effort to disrupt or manipulate the proceedings. In its Memorandum Decision and Order, the district court stated that Pina’s “request was also reported as an ultimatum, presenting the court with the predicament of either allowing a criminally charged defendant to represent himself in the last hours of his first degree murder trial, or the defendant would refuse to appear.” Therefore, I find that the district court did not abuse its discretion in denying Pina’s midtrial motion to proceed pro se because it was equivocal and untimely.
For the forgoing reasons, I would affirm the conviction for first degree murder.
HORTON, J., concurs.

. The court laid forth this standard in a discussion on hearsay evidence, finding that there was overwhelming evidence implicating the defendant in the underlying felony, therefore a jury would have found him guilty on the felony murder theory even without the hearsay. Id.

. In Hoppe, the Court found error in the district court’s pre-trial denial of the defendant’s motions for self-representation. It is, therefore, distinguishable from the case before this Court now.